## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:  ERNEST HARRIS and MATTIE HARRIS, <br><br> Debtors. | CASE NO. 03-44826-H4-13 |
| ERNEST HARRIS and MATTIE HARRIS, on behalf of themselves and all other similarly situated Chapter 13 debtors, <br><br> Plaintiffs, <br><br> v. <br><br> FIDELITY NATIONAL INFORMATION SERVICES INC. d/b/a FIDELITY NATIONAL FORECLOSURE & BANKRUPTCY SOLUTIONS, <br><br> Defendants. | ADVERSARY NO. 08-3014 |

## MOTION TO DISMISS
[Relates to Docket No. 1]

## **Table of Contents**

|  |  | **PAGE** |
|---|---|---|

I.    INTRODUCTION ......................................................................... 1

II.   PROCEDURAL HISTORY............................................................. 2

III.  STATEMENT OF FACTS ............................................................ 3

IV.  SUMMARY OF ARGUMENT ..................................................... 6

V.   ARGUMENT AND AUTHORITIES .............................................. 9

    A.   This Court Lacks Jurisdiction Of The Claims Set Forth In The Complaint.................................................................................. 9

        1.   Rule 12(b)(1) Standard In General ................................. 9

        2.   This Court Lacks Jurisdiction Of The Claims Asserted In The Complaint Because Those Claims Will Not Have Any Conceivable Effect On The Named Plaintiffs' Bankruptcy Estate.................... 10

    B.   This Court Should Dismiss The Complaint Pursuant To Rule 12(b)(6) For Failure To State A Claim For Which Relief Can Be Granted....................................................................................... 16

        1.   Rule 12(b)(6) Standard In General ............................... 16

        2.   Fidelity's Arrangement With Its Network Attorneys Is Legal And Valid................................................................... 17

            (1)  The Relationship Between Fidelity, Saxon And Mann And Stevens Does Not Violate Any Statute Or Ethical Rule.   17

                a.   The Texas Rules Of Professional Conduct Are Not Applicable And, In Any Event, Were Not Violated..........................................................19

                b.   The Criminal Code Is Not Applicable And, In Any Event, Was Not Violated..................21

                c.   Section 504 Of The Bankruptcy Code Is Not Applicable, And In Any Event, Was Not Violated..........................................................23

3.     The Claims Based Upon Alleged Violations Of Bankruptcy Code § 506 And Bankruptcy Rule 2016 Should Be Dismissed For Failure To State A Claim (Counts I and II). ................................. 23

      (1)     There Is No Private Right Of Action To Enforce § 506 Of The Bankruptcy Code Or Bankruptcy Rule 2016. ............ 23

4.     Plaintiffs' State Law Claims For Breach Of Contract And Civil Conspiracy Are Preempted By The Bankruptcy Code And, Therefore, Should Be Dismissed (Counts III and V). ................... 28

5.     Plaintiffs' Claims For Violations Of Section 506(b) Of The Bankruptcy Code § 506(b) And Breach Of Contract Fail As A Matter Of Law Because Fidelity Is Not A "Creditor" (Counts I and III). ........................................................................ 31

      (1)     Plaintiffs' Claim For Alleged Violation Of Section 506 Of The Bankruptcy Code Must Fail Because Fidelity Is Not A "Creditor." (Count I)..........................................32

      (2)     Plaintiffs' Claim For Alleged Breach of Contract Relating To The Plan Fails Because Fidelity Is Not A " Creditor" And Did Not Violate Any Provision Of The Plan (Count III)..........................................................32

6.     The Plaintiffs Have Failed To State A Claim Under The Bankruptcy Code For Alleged Violations Of The "Fee Approval Provision" Of Fed.R.Bankr.P. 2016 Because That Provision Is Inapplicable (Count II). ................................................................. 35

7.     The Plaintiffs Have Failed To State A Claim Under Bankruptcy Code § 362(h) Because Bankruptcy Code § 362(a)(3) Is Inapplicable And, In Any Event, Was Not Violated.  (Count IV).36

8.     The Causes Of Action Set Forth In The Complaint Constitute An Improper Collateral Attack On The Agreed Order. (Counts I-VI)................................................................................. 38

9.     The Claims For Alleged Stay Violation And Civil Conspiracy Should Be Dismissed Due To The Expiration Of The Applicable Statute Of Limitations (Counts IV And V)................................... 39

10.     Count VI Of The Complaint Fails Because "Punitive Damages" Are Not A Cause of Action.......................................................... 41

VI.     CONCLUSION ................................................................................ 42

## **TABLE OF AUTHORITIES**

### **CASES**

*ASARCO LLC v. Americas Mining Corp.*,
  2007 U.S. Dist. LEXIS 85832 (5th Cir. Oct. 12, 2007) ..........................................41, 42

*Acara v. Banks*,
  470 F.3d 569 (5th Cir. 2006) ......................................................................................25

*Adams v. Prudential Securities, Inc. (In re Foundation for New Era Philanthropy)*,
  201 B.R. 382 (Bankr. E.D. Pa. 1996) ..........................................................................13

*In re Adams*,
  212 B.R. 703 (Bankr. D.Mass. 1997) ...........................................................................40

*Alexander v. Sandoval*,
  532 U.S. 275 (2000).............................................................................................24, 25

*In re Barclay*,
  337 B.R. 728, 2006 Fed. App. 0004N (6th Cir. BAP Feb. 1, 2006)...........................40

*Bass v. Denney(In re Bass))*,
  171 F.3d 1016 (5th Cir. 1999) .............................................................................14,15

*Beck v. Gold Key Leasing, Inc.*,
  283 B.R. 163(Bankr. E.D. Pa. 2002) ..........................................................................11

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. at 1955 (2007)............................................................................16, 17, 22

*In re Bernheim Litigation*,
  290 B.R. 249 (D.N.J. 2003) .......................................................................................40

*Bessette v. Avco Finance Serv. Inc.*,
  230 F.3d 439 (1st Cir. 2000),.....................................................................................26

*Board of Regents v. Tomanio*,
  446 U.S. 478 (1980).....................................................................................................39

*Bradley v. Phillips Petroleum Co.*,
  No. H-05-3912, 2007 U.S. Dist. LEXIS 92981 (S.D. Tex. Dec. 18,
  2007) ........................................................................................................................16

*Estate of Calloway v. Marvel Entertainment Group*,
  9 F.3d 237 (2d Cir. 1993), <u>cert. denied</u>, 511 U.S. 1081 (1994) .................................28

*Campbell v. Countrywide Home Loans, Inc. (In re Campbell)*,
    361 B.R. 831 (Bankr. S.D.Tex 2007) ........................................................................37

*Canion v. Evans*,
    196 F.3d 579 (5th Cir. 1999) ....................................................................................15

*Casas v. Am. Airlines, Inc.*,
    304 F.3d 517 (5th Cir. 2002) ....................................................................................25

*Cedars-Sinai Medical Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993)...................................................................................10

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995).................................................................................................13

*In re Central Ice Cream Co.*,
    82 B.R. 933 (N.D. Ill. 1987) ....................................................................................13

*Central Va. Community College v. Katz*,
    546 U.S. 356, 126 S. Ct. 990 (2006).........................................................................14

*Chiasson v. Bingler (In re Oxford Management Inc.)*,
    4 F.3d 1329 (5th Cir. 1993) .................................................................................25, 26

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ....................................................................................17

*Connecticut National Bank v. Germain*,
    503 U.S. 249 (1992).................................................................................................33

*Connell v. Connell*,
    889 S.W.2d 534 (Tex. Ct. App. 1994, writ denied)....................................................40

*Copeland v. Merrill Lynch & Co., Inc.*,
    47 F.3d 1415 (5th Cir. 1995) ....................................................................................39

*Cort v. Ash*,
    422 U.S. 66 (1975)...................................................................................................24

*In re Costa*,
    172 B.R. 954 (Bankr. E.D.Cal. 1994).......................................................................27

*In re County Seat Stores, Inc.*,
    2007 WL. 4191946 (Bankr. N.D. Tex. June 21, 2007)................................................13

*In re Cox*,
    2007 WL. 4219407 (Bankr. W.D.Tex. Nov. 28, 2007)................................................33

*Cox v. Delaware, Inc.,*
    242 B.R. 444 (N.D. Ill. 1999) ...........................................................................31

*Csondor v. Weinstein, Treiger & Riley, P.S. (In re Csondor),*
    309 B.R. 124 (Bankr. E.D. Pa. 2004) .............................................................12

*In re D.S.,*
    76 S.W.3d 512 (Tex. Ct. App. 2002) ...............................................................39

*Doe v. Hillsboro Independent School District,*
    81 F.3d 1395 (5th Cir. 1996) ............................................................................16

*Eastern Equip. & Services Corp. v. Factory Point National Bank,*
    236 F.3d 117 (2d Cir. 2001)..............................................................................30

*Elledge v. Friberg-Cooper Water Supply Corp., NO. 06-0677,*
    2007 Tex. LEXIS 706 (Tex. Aug. 24, 2007) ....................................................41

*Feld v. Zale Corp. (In re Zale Corp.),*
    62 F.3d 746 (5th Cir. 1995) ..............................................................................14

*First National Bank of Eagle Pass v. Levine,*
    721 S.W.2d 287 (Tex. 1986)..............................................................................40

*Gabel v. Olson (In re Olson),*
    355 B.R. 649 (Bankr. E.D. Tenn 2006) ............................................................26

*Gardner v. New Jersey,*
    329 U.S. 565 (1947)...........................................................................................14

*HECI Exploration Co. v. Neel,*
    982 S.W.2d 881 (Tex. 1998)..............................................................................40

*Holloway v. Household Automotive Finance Corp.,*
    227 B.R. 501 (Bankr. N.D.Ill. 1998) ...........................................................27, 30

*In re Harris,*
    279 B.R. 254 (9th Cir. BAP 2002).....................................................................33

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,*
    530 U.S. 1 (2000)...............................................................................................34

*In re Hence,*
    No. 06-32451-H4-13, 2007 Bankr. LEXIS 4156 (Bankr. S.D. Tex.
    Dec. 5 2007).......................................................................................................35

*Irwin v. Veterans Affairs*,
    874 F.2d 1092, (5th Cir. 1989), aff'd sub nom., <u>Irwin v. Department of</u>
    <u>Veterans Affairs</u>, 498 U.S. 89, 111 S. Ct. 453 (1991) ............................................9, 10

*In re JMP-Newcor Int'l., Inc.*,
    225 B.R. 457 (Bankr. N.D. Ill. 1998) ...............................................................15

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999) ...........................................................................16

*Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*,
    411 F.3d 452 (3d Cir. 2005).............................................................................26

*Katz*,
    546 U.S. at 358.................................................................................................14

*Knox v. Sunstar Acceptance Corp. (In re Knox)*,
    237 B.R. 687 (Bankr. N.D. Ill. 1999) ......................................................... *passim*

*Kontrick v. Ryan*,
    540 U.S. 443 (2004).........................................................................................11

*Kraus v. Howroyd-Wright Empl. Agency, Inc.*,
    No. 06-975, 2008 U.S. Dist. LEXIS 1254 (E.D. Pa. Jan. 8, 2008)..............................41

*In re Leverett*,
    378 B.R. 793 (Bankr. E.D.Tex. 2007) ...........................................................33

*In re Logan*,
    124 B.R. 729 (Bankr. S.D. Ohio 1991)...........................................................28

*In re Lorax Corp.*,
    295 B.R. 83 (Bankr. N.D. Tex. 2003) .............................................................12

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ...........................................................................17

*MSR Exploration v. Meridian Oil, Inc.*,
    74 F.3d 910 (9th Cir. 1996) ...............................................................29, 30, 31

*In re Majestic Energy Corp.*,
    835 F.2d 87 (5th Cir. 1988) .............................................................................13

*In re Marcus Hook Development Park, Inc.*,
    153 B.R. 693 (Bankr., W.D. Pa. 1993) ...........................................................28

*Menchaca v. Chrysler Credit Corp.,*
613 F.2d 507 (5th Cir. 1980), cert. denied, 449 U.S. 953, 101 S. Ct.
358, 66 L. Ed. 2d 217 (1980) .................................................................................10

*In re Methyl Tertiary Butyl Ether Products Liability Litigation,*
517 F. Supp. 2d 662 (S.D.N.Y. Sept. 20, 2007) ......................................................41

*In re Miller,*
397 F.3d 726 (9th Cir. 2005) ..................................................................................37

*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),*
910 F.2d 784 (11th Cir. 1990) ................................................................................15

*Mugica v. Helena Chemical Co. (In re Mugica),*
362 B.R. 782 (Bankr. S.D.Tex. 2007) .....................................................................14

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.,*
No. 06-11283, 2007 U.S. App. LEXIS 29738 (5th Cir. Dec. 21, 2007)....................17

*Norris v. Hearst Trust,*
500 F.3d 454 (5th Cir. 2007) ..................................................................................16

*Norwest Bank Worthington v. Ahlers,*
485 U.S. 197 (1988).................................................................................................26

*Pacor, Inc. v. Higgins,*
743 F.2d 984 (3d Cir. 1984)...............................................................................13, 14

*In re Padilla,*
2006 WL 2090210 (Bankr. S.D.Tex. June 29, 2006) ..........................................33, 35

*Papasan v. Allain,*
478 U.S. 265 (1986)................................................................................................16

*Paterson v. Weinberger,*
644 F.2d 521 (5th Cir. 1981) ..................................................................................10

*Patterson v. Shumate,*
504 U.S. 753 (1992)................................................................................................33

*Perkins Coie v. Sadkin (In re Sadkin),*
36 F.3d 473 (5th Cir. 1994) ....................................................................................25

*Perniciaro v. Natale,*
136 B.R. 344 (Bankr. E.D.N.Y. 1992).....................................................................11

*Pertuso v. Ford Motor Credit Co.,*
233 F.3d 417 (6th Cir. 2000) ..............................................................................26, 29

vii

*Phillips v. First City, Texas - Tyler, N.A.,*
    966 F.2d 926 (5th Cir. 1992) ................................................................11, 28

*Porter v. NationsCredit Consumer Discount Co. (In re Porter),*
    295 B.R. 529 (Bankr. E.D.Pa. 2003) .........................................................12

*Safeway Insurance Co. v. Botma,*
    2003 WL 24100783 (D. Ariz. March 7, 2003), aff'd, 129 Fed.Appx.
    355 (9th Cir. April 7, 2005) ......................................................................41

*In re Sanchez,*
    372 B.R. 289 (Bankr. S.D.Tex. 2007) ..............................................27, 28, 35

*Scanlan v. Tex. A&M University,*
    343 F.3d 533 (5th Cir. 2003) .....................................................................17

*Scheuer v. Rhodes,*
    416 U.S. 232, 94 S. Ct. 1683 (1974)..........................................................10

*Seniguar v. Ford Motor Co.,*
    222 F. Supp. 2d 829 (E.D. Tex. 2002)........................................................40

*Shiner v. Moriarty,*
    706 A.2d 1228 (Pa. Super. Ct. 1998), appeal denied, 556 Pa. 711, 729
    A.2d 1130 (1998) ......................................................................................31

*Simmons v. Ford Motor Credit Co.,*
    224 B.R. 879 (Bankr. N.D.Ill. 1998) .........................................................27

*Smith v. County of Racine,*
    2007 WL 2570435 (E.D. Wis. Aug. 31, 2007)............................................41

*Sovran Bank v. Anderson,*
    743 F.2d 223 (4th Cir. 1984) .....................................................................33

*Spartan Mills v. Bank of America, III,*
    112 F.3d 1251 (4th Cir. 1997), cert. denied, 522 U.S. 969 (1997).............38

*Sullivan v. Bickel & Brewer,*
    943 S.W.2d 477 (Tex. Ct. App. 1995, writ denied).....................................41

*Tennessee Student Assistance Corp. v. Hood,*
    541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004)...........................14

*The Bank Of New England, N.A., Plaintiff, v. Hanson Industries, Inc. (In
    re Hanson Industrial, Inc.),*
    83 B.R. 659 (Bankr. D. Minn. 1988) .........................................................15

*Tompkins v. Cyr,*
   995 F. Supp. 689 (N.D. Tex. 1998) aff'd, 202 F.3d 770 (5th Cir. 2000) .....................28

*Touche Ross & Co. v. Redington,*
   442 U.S. 560 (1979).................................................................................................24

*Textron Funding Corp. v. Bessette,*
   532 U.S. 1048 (2001)..............................................................................................26

*U.S.A v. Sutton,*
   786 F.2d 1305 (5th Cir. 1986) ................................................................................25

*U.S. Trustee v. Gryphon at the Stone Mansion, Inc.,*
   166 F.3d 552 (3d Cir. 1999)....................................................................................11

*U.S. v. Ritchie,*
   15 F.3d 592 (6th Cir. 1994) ..............................................................................9, 10

*United States ex rel. Riley v. St. Luke's Episcopal Hospital,*
   355 F.3d 370 (5th Cir. 2004) ..................................................................................16

*Via Net v. TIG Insurance Co.,*
   211 S.W.3d 310 (Tex. 2006)....................................................................................42

*Walker v. Cadle Co. (In re Walker),*
   51 F.3d 562 (5th Cir. 1995) ..............................................................................13, 15

*Walls v. Wells Fargo Bank, N.A. (In re Walls),*
   276 F.3d 502 (9th Cir. 2002) ..................................................................................26

*Walls v. Wells Fargo Bank,*
   255 B.R. 38 (E.D. Cal. 2000)............................................................................30, 31

*Williams v. Khalaf,*
   802 S.W.2d 651 (Tex. 1990)..............................................................................40, 41

*Williams v. Sears,*
   244 B.R. 858 (S.D. Ga. 2000).................................................................................11

*Williamson v. Tucker,*
   645 F.2d 404 (5th Cir. 1981) ..................................................................................10

*Wilson v. Garcia,*
   471 U.S. 261 (1985).................................................................................................41

*Wood v. Wood (In re Wood),*
   825 F.2d 90 (5th Cir. 1987) ..............................................................................13, 14

*In re Xonics, Inc.,*
   813 F.2d 127 (7th Cir. 1987) ..........................................................................14

*Yancey v. Citifinancial, Inc. (In re Yancey),*
   301 B.R. 861 (Bankr. W.D.Tenn. 2003) ..............................................26, 27, 28

## <u>STATUTES</u>

11 U.S.C. § 101(10)(A)-(C) .............................................................................32

11 U.S.C § 105 ..................................................................................... *passim*

11 U.S.C. § 105(a) .............................................................................25, 26, 27

11 U.S.C. § 348(d) ..........................................................................................32

11 U.S.C. § 362 ...............................................................................................31

11 U.S.C. § 362(h) .............................................................25, 27, 36, 40

11 U.S.C. § 362(k) .............................................................25, 28, 41

11 U.S.C § 504 ....................................................................................7, 23

11 U.S.C. § 504(a) ...........................................................................................23

11 U.S.C. § 506 ..................................................................................... *passim*

11 U.S.C. § 502(f) ............................................................................................32

11 U.S.C. § 502(g) ...........................................................................................32

11 U.S.C. § 502(h) ...........................................................................................32

11 U.S.C. § 502(i) .............................................................................................32

11 U.S.C. § 504(a) ......................................................................................8, 23

11 U.S.C. § 506 .........................................................................................32, 33

11 U.S.C. § 506(a) ...........................................................................................33

11 U.S.C. § 506(c) ...........................................................................................34

11 U.S.C. § 549 ...............................................................................................13

11 U.S.C. § 550 ...............................................................................................13

11 U.S.C. § 1141(a) ........................................................................................34

11 U.S.C. § 1327(a) .................................................................................... 34

11 U.S.C. § 503(b)(2) ............................................................................. 8, 23

11 U.S.C. § 503(b)(4) ............................................................................. 8, 23

11 U.S.C. § 506(a) ....................................................................................... 34

11 U.S.C. § 506(b) ................................................................................ *passim*

18 U.S.C. § 155 ................................................................................ 8, 9, 21, 22

28 U.S.C. § 1332 .......................................................................................... 15

28 U.S.C. § 1334 ..................................................................................... 11, 15

28 U.S.C. § 1334(a) ..................................................................................... 11

28 U.S.C. § 1334(b) ................................................................................ 11, 15

28 U.S.C. § 157 .................................................................................. 11, 13, 15

28 U.S.C. § 157(b) ....................................................................................... 13

28 U.S.C. § 157(b)(1) ................................................................................... 12

28 U.S.C. § 157(b)(2) .............................................................................. 12, 13

28 U.S.C. § 157(c) ....................................................................................... 12

28 U.S.C. § 2072 .......................................................................................... 36

## RULES

Fed R. Bankr. P. 2016 .......................................................................... *passim*

Fed R. Bankr. P. 2016(a) ............................................................................. 35

Fed. R. Bankr. P. 7023 ............................................................................ 3, 11

Fed. R. Bankr. P. 9017 ................................................................................... 2

Fed. R. Bankr. P. 9023 .................................................................................. 38

Fed. R. Bankr. P. 9024 .................................................................................. 38

Fed. R. Civ. P. 8(b)(1) .................................................................................... 2

Fed. R. Civ. P. 8(e)(1) .................................................................................... 2

Fed. R. Civ. P. 12(b)(1)................................................................................9, 15

Fed. R. Civ. P. 12(b)(6) .............................................................................16, 17

Fed. R. Civ. P. 12(f) ...........................................................................................2

Fed. R. Civ. P. 23........................................................................................3, 11

Fed. R. Evid. 201 ...............................................................................2, 17, 38

Fed. R. Evid. 201(c) ........................................................................................33

Fed. R. Evid. 802(d)(2) ...................................................................................33

Tex. Bus. & Com. Code § 17.565 ...................................................................40

Tex. Civ. Prac. & Rem. § 16.003 ...................................................................40

Tex. Civ. Prac. & Rem. § 16.004 (2007) .......................................................41

Tex. Civ. Prac. & Rem. § 38.001 ...................................................................31

Tex. Disciplinary R. Prof'l Conduct 153 (June 1957).....................................20

Tex. R. Prof. Cond. Opinion 502 (April 1994).........................................20, 21

Tex. R. Prof. Cond. Opinion 351 (March 1970).......................................20, 21

Tex. R. Prof. Cond. Opinion 231 (April 1951).........................................20, 21

Tex. R. Prof. Cond. Rule 5.04(a) ...............................................................19, 20

Tex. Gov't. Code Ann., tit. 2, Subtit. G app. A (Vernon 2005)..................19, 20

## OTHER AUTHORITIES

130 Cong.Rec. S. 8893-8897 (daily ed. June 29, 1984), reprinted in 1984
     U.S. Code Cong. & Ad.News 577)(Comments of Senator Hatch).............................15

Lawrence P. King, Collier on Bankruptcy §7.05[1][d](15th Ed. 2004) .............................9

Lawrence P. King, Collier on Bankruptcy §7.05[1][f] (15th Ed. 2004).............................9

2 Lawrence P. King, Collier on Bankruptcy ¶105.01[1] ...................................................11

2 Lawrence P. King, Collier on Bankruptcy ¶105.01[2] ...........................................26, 34

Texas Medical Practice Act §151.055 ...............................................................................21

Fidelity National Information Services, Inc. ("Fidelity") moves this Court to dismiss the Complaint filed by Ernest and Mattie Harris ("Harris or "Named Plaintiffs") on behalf of a putative class of Chapter 13 debtors ("Unnamed Plaintiffs," together with Harris, collectively, "Debtors" or "Plaintiffs")

## I.    INTRODUCTION

1.    The Named Plaintiffs filed this case against Fidelity on behalf of a putative class of Chapter 13 debtors whose bankruptcy cases were filed in the Southern District of Texas.  The Debtors seek injunctive and monetary relief for alleged violations of numerous sections of the United States Bankruptcy Code ("Bankruptcy Code"), Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and state law.

2.    The crux of the Complaint is that Fidelity's relationship with various law firms ("Network Attorneys"), in this case Mann and Stevens P.C. ("Mann and Stevens"), pursuant to agreements for Fidelity's provision to Network Attorneys of administrative support services and technology ("Network Agreements"), somehow violates the Bankruptcy Code, a Bankruptcy Rule, an ethics rule, a criminal statute, and constitutes a breach of contract and an unlawful conspiracy. *The Plaintiffs allegations are wrong.  The entire Complaint is devoid of any factual or legal support.  In short, the Complaint is nothing more than scandalous, hollow rhetoric.*

3.    Debtors' misguided portrayal of Fidelity (painted in broad strokes with no substance) as the "puppet master", controlling the actions of various parties in individual bankruptcy cases, fails to state a cause of action.  Fidelity provides valid, lawful and valuable administrative support services to law firms and clients, by facilitating the flow of information between mortgage servicers and law firms.  The Complaint is ill-

conceived, untrue and fails, as a matter of law. There is no question that it should be dismissed in its entirety, with prejudice.[1]

## II.     PROCEDURAL HISTORY[2]

4.      On or about October 16, 2003 ("Petition Date"), the Named Plaintiffs filed a Petition for Relief (the "Petition") pursuant to Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). The Named Plaintiffs filed their Chapter 13 Plan summary on that same date. One of the creditors listed in the plan summary is Saxon Mortgage ("Saxon"). Fidelity is not listed as either a secured or unsecured creditor.

5.      Saxon filed an Objection to the Chapter 13 Plan ("Objection") on December 23, 2003 in which Saxon averred that the prepetition arrearages were $4,514.54, not $3,805.35 as set forth in the plan. Thereafter, on January 30, 2004, the Named Plaintiffs filed an Amended Plan (the "Plan") which corrected, among other things, the arrearages on Saxon's claim to $4,514.54. In light of that correction, on February 2, 2004, Saxon withdrew its objection to confirmation of the Plan. On May 4,

---

[1]      As the Court is aware, Federal Rule of Civil Procedure 12(f) is designed to reinforce the requirement of Federal Rule of Civil Procedure 8(b)(1) that pleadings be "simple, concise and direct." By way of example only, and not intended to be all-inconclusive, Plaintiffs allege that Fidelity is involved in a "kick-back scheme" of "criminal" proportions; that it is a "puppet master"; that it "shrouds its role in darkness" as the "secret client directing mortgage servicer law firms", *et cetera*. Such scandalous allegations are not intended to inform Fidelity of the claims against it nor are they intended to allow this Court to properly ascertain the causes of action being raised. Rather, they are an unsophisticated and inappropriate attempt to do through a Federal Court pleading that which could not be done outside of the context of the lawsuit and that is to slander Fidelity's good name. This Court should not be used as a vehicle for publicity-seeking lawyers attempting to advance their own agenda. Rather, Rule 8(e)(1) and Rule 12(f) are designed to stop exactly such behavior. The pleadings filed by Plaintiffs in this case have no place in a public court and most particularly, no place in the federal court system.

[2]      Pursuant to Federal Rule of Evidence 201 (as applicable by Fed. R. Bankr. P. 9017), Fidelity requests that the Court take judicial notice of the docket entries in the Named Plaintiff's bankruptcy case.

2004, the Bankruptcy Court entered an Order confirming the Plan ("Confirmation Order").

6.       Prior to the entry of the Confirmation Order, Saxon filed a motion for relief from the automatic stay ("Stay Relief Motion") on April 7, 2004. On April 9, 2004, the Named Plaintiffs filed a response to the Stay Relief Motion. After entry of the Confirmation Order, on May 19, 2004, the parties entered into an Agreed Order resolving the Stay Relief Motion ("Agreed Order").

7.       On January 16, 2008, almost 4 1/2 years after the Petition Date and four years after entry of the Confirmation Order, the Named Plaintiffs (allegedly on behalf of themselves and those similarly situated)[3] filed a Complaint ("Complaint") against Fidelity thereby commencing this adversary proceeding. A summons was issued on January 23, 2008. Thereafter, Fidelity timely filed this Motion To Dismiss (the "Motion"). Contemporaneously with this Motion, Fidelity also filed a motion for an order (i) withdrawing the reference of this adversary proceeding and (ii) staying proceedings (except for briefing in connection with the pending motions) in the Bankruptcy Court pending the District Court's decision on withdrawal of the reference.

## III.   STATEMENT OF FACTS

8.       Fidelity provides administrative support services and related technology to, among others, its mortgage servicing clients and their law firms. Specifically, Fidelity manages data and communications within its proprietary technology in foreclosure and

---

3       This Motion to Dismiss does not address the dubious merits of the Debtors' class certification request. Fidelity reserves its rights to oppose certification of any class of debtors, even a class comprised of debtors in the Southern District of Texas. Geographic congruity and potential jurisdiction over the claims of other debtors in the Southern District does not substitute for the commonality, typicality, adequacy and other requirements of Federal Rule of Civil Procedure 23, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7023. The Complaint and the underlying reality of the claims and defenses that they have put at issue do not support a group determination, however that group is defined geographically.

bankruptcy cases, to enable servicers and their law firms to efficiently and effectively manage mortgage loans in default. Fidelity performs a variety of non-legal administrative functions, including, among other things, initiating contact on behalf of its clients with client selected Network Attorneys via an automated referral system, monitoring the status of accounts, tracking action items and providing reports to mortgage servicers. A description of the many services that Fidelity provides to its Network Attorneys is set forth in ¶¶ A-EE of § 2 of Exhibit A to the Network Agreement (which is attached to the Complaint as Exhibit 1) (Bates "Saxon 0198-0199").

9.      For the administrative support services and proprietary technology made available to and licensed by Network Attorneys, the Network Attorneys pay Fidelity a small, *flat fee. The fees are invoiced monthly and are payable regardless of whether the law firms are paid by the mortgage servicer.* See Network Agreement, Exhibit 1 to the Complaint, ¶ 5. Fidelity does not receive a share of legal fees earned by Network Attorneys (whether hourly or flat fees), but rather receives a set fee as payment for the administrative services and technology platform that Fidelity provides to the Network Attorneys. See Exhibit B to Network Agreement (Exhibit 1 to the Complaint) at §§ IV.E and V.6 (Fidelity receives no part of Mann and Stevens' hourly fees); §§ IV.A, C, and D (Fidelity receives no fee where Mann and Stevens prepared demand letters or lost note affidavit); § V.5 (Fidelity receives no fee where Mann and Stevens attends hearing) (Bates "Saxon 0200-0201").

10.     Saxon, as the servicer of the Named Plaintiffs' mortgage loan, retained Mann and Stevens as its bankruptcy counsel.

4

11.     On behalf of themselves and the Unnamed Plaintiffs, the Named Plaintiffs challenge Fidelity's business model and allege that Fidelity has violated certain provisions of the Bankruptcy Code, Bankruptcy Rule 2016, and state law.  Specifically, the Named Plaintiffs contend that Fidelity (i) imposed attorneys' fees on the Named Plaintiffs' accounts without securing the Bankruptcy Court's approval of such fees; (ii) received a "kickback" from attorneys' fees paid by Saxon; and, (iii) illegally fixed fees.

12.     The Debtors assert the following counts and request the following relief on behalf of the putative class:[4]

> Count I:  class claim for alleged violations of Bankruptcy Code
> § 506(b).  The Debtors seek injunctive and other relief pursuant to
> Bankruptcy Code § 105.  The Debtors seek the following monetary
> and non-monetary relief:  (a) an injunction preventing Fidelity
> from collecting its fees, (b) an order reversing all attorneys' fees
> charged, and (c) an order refunding and disgorging fees and
> interest collected by Fidelity.

> Count II:  class claim for alleged violations of Federal Rule of
> Bankruptcy Procedure 2016.  The Debtors seek the same relief as
> in Count I.

---

[4]     The Named Plaintiffs seek to define the putative class as consisting of all Chapter 13 debtors in the Southern District of Texas who are (a) presently subject to any claim of any kind by Fidelity, Fidelity's clients and/or Fidelity's Local Counsel/Network Attorneys and (b) against whom Fidelity and its Network Attorneys have "kicked back" attorneys' fee payments pursuant to Fidelity's Network Agreements.

Count III:  class claim for alleged breach of contract.  The Debtors seek the same relief as in Count I, plus attorneys' fees pursuant to § 38.001 of the Texas Civil Practice & Remedies Code.

Count IV:  class claim for alleged violations of Bankruptcy Code § 362(a)(3).  The Debtors state that the power to seek redress for these violations is found in each of the enumerated sections and Bankruptcy Code § 105.  The Debtors seek the same relief as in Count I.

Count V:  class claim for alleged civil conspiracy.  The Debtors seek a decree that Fidelity is liable for all fees paid by the Debtors to Network Attorneys.

Count VI:  class claim for alleged punitive damages.  The Debtors seek an award of no less than three times the value of the reversed charges, interest, refunds, reimbursements and disgorgement awarded under the other counts, plus pre- and post-judgment interest.

## IV.    SUMMARY OF ARGUMENT

13.    The causes of action asserted in the Complaint fail as a matter of law for many reasons.  First, the Bankruptcy Court lacks subject matter jurisdiction of every count in the Complaint because none of those counts will conceivably have any effect on the Named Plaintiffs' estate.  Second, the Plaintiffs have failed to state a claim and instead launch an improper collateral attack on prior orders entered by the Bankruptcy Court.

14.     As detailed further below, Counts I and II should be dismissed for failure to state a claim because the Plaintiffs have no private cause of action under Section 506(b) of Bankruptcy Code or Federal Rule of Bankruptcy Procedure 2016.  Further, Fidelity is not a "creditor."

15.     Counts III and V should be dismissed for failure to state a claim because breach of contract and civil conspiracy claims are preempted by the Bankruptcy Code. Moreover, the Plaintiffs have failed to plead with any specificity regarding the contractual relationship or specific breach.  Count V is also barred by the applicable statute of limitations for civil conspiracy claims.

16.     Count IV should also be dismissed for failure to state a claim because nothing alleged in the Complaint can be construed as a violation of the automatic stay under Section 362(a)(3).  As with the other counts in the Complaint, Count IV is barred by the applicable statute of limitations and constitutes an improper collateral attack on prior court orders.

17.     Dismissal of Count VI of the Complaint is similarly warranted.  Count VI is devoid of merit and impermissibly seeks to convert a remedy for punitive damages into a claim.

18.     Not only are the legal premises cited by Plaintiffs in their Complaint vacuous, Plaintiffs recklessly assert that Fidelity's business model violates ethical rules, violates the prohibition on fee sharing set forth in Bankruptcy Code § 504, and constitutes a bankruptcy crime.  See Complaint ¶¶ 25-26, 82-94, 100-105.  These statements, inserted for the sole purpose of sensationalizing the complaint, are not set

7

forth as specific claims.  The Plaintiffs' scandalous allegations are devoid of substance, and lack any factual or legal support.

19.     Plaintiffs' averments in ¶ 26 of the Complaint regarding ethical rule violations are misplaced.  Fidelity is not a lawyer and, as such, the ethical rules do not apply.  Moreover, no private cause of action exists for contravention of the Rules of Conduct.  More importantly, however, it is not a violation of the Rules of Conduct for a service provider of any kind to invoice a flat fee for administrative services and technology provided to an attorney:  that simply is not "sharing of legal fees."  To construe it as such would call into question any fees paid by attorneys for rent, utilities or even copy services.

20.     While the Bankruptcy Code does regulate compensation sharing, it does so only under certain circumstances.  Section 504(a) limits fee sharing among lawyers and other professionals but only of those receiving fees pursuant to §§ 503(b)(2) and 503(b)(4).  Section 503(b)(2) only applies to professionals employed by a trustee, debtor in possession, or creditors' committee.  See 11 U.S.C. § 503(b)(2).  Section 503(b)(4) only applies to attorneys for creditors for making certain contributions to the bankruptcy estate, which circumstances are inapplicable here.  See 11 U.S.C. § 503(b)(4).  Because both §§ 503(b)(2) and (b)(4) are inapplicable, § 504 is likewise inapplicable.

21.     Plaintiffs also recklessly assert, without defining a specific claim or allegation, that Fidelity's conduct constitutes a bankruptcy crime under § 155 of title 18, U.S. Code.  There is no private cause of action under this criminal statute.  Moreover, as indicated above, Fidelity's fees were paid by Mann and Stevens, not the Named Plaintiffs' bankruptcy estate.  Those fees were payable regardless of whether Saxon ever

8

paid Mann and Stevens.[5] If fees charged by Fidelity to its Network Attorneys violates §

155, every fixed-fee agreement between a law firm and its process server, landlord or

copy service would also be in violation.

     22.    In short, there is nothing nefarious or improper about Fidelity's

arrangement with its Network Attorneys or clients.  There is nothing suspect or improper

about the manner in which Fidelity is paid for its administrative services and technology.

Rather, Fidelity's business model is in all respects a legal and proper arm's length

transaction.  It also benefits individual borrowers, and promotes the smooth

administration of bankruptcy proceedings.  For many reasons, the Complaint is

completely devoid of merit and should be dismissed.  In the interests of economic and

judicial economy, Fidelity should not be forced to defend the frivolous allegations in the

Complaint.

## V.    ARGUMENT AND AUTHORITIES

### A.    This Court Lacks Jurisdiction Of The Claims Set Forth In The Complaint.

#### 1.    Rule 12(b)(1) Standard In General

     23.    A motion filed under Rule 12(b)(1) can be either a facial or a factual

attack on the Complaint.  If the motion challenges the subject-matter jurisdiction based

on the sufficiency of the pleading's allegations, it is a facial attack.  See Irwin v. Veterans

Affairs, 874 F.2d 1092, 1096 (5th Cir. 1989), aff'd sub nom., Irwin v. Department of

Veterans Admin., 498 U.S. 89, 111 S. Ct. 453 (1991); U.S. v. Ritchie, 15 F.3d 592, 598

---

[5]    Of course, the Named Plaintiffs' claim would also fail miserably at any trial because there was no "fraudulent" intent and Fidelity did not charge more than the services warranted.  COLLIER ON BANKRUPTCY § 7.05[1][d] and [f].  Indeed, Fidelity's tracking and enforcement of law firms' invoices has actually saved servicers (and, therefore, debtors) millions of dollars in attorneys' fees.

(6th Cir. 1994).  In a facial attack, the court accepts all material allegations of the complaint as true and construes them in a light favorable to the nonmoving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).  Fidelity should not be forced to defend the frivolous allegations contained in the Complaint.

24.    If the motion controverts plaintiff's allegations of jurisdiction, it is a factual attack challenging the court's subject-matter jurisdiction.  Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981); U.S. v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  In a factual attack on jurisdiction, the allegations in the complaint are not controlling.  See Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981).  Only uncontroverted factual allegations are accepted as true.  Paterson, 644 F.2d at 523; Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  The Court may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction.  Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981); Menchaca v. Chrysler Credit Corp., 613 F.2d 507 (5th Cir. 1980), cert. denied, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) (upholding dismissal for lack of subject matter jurisdiction based in part on the district court's determination on the basis of written record and testimony of all parties of factual issues that were in dispute).  Therefore, a plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence.  See Irwin, 874 F.2d at 1096.

> **2.    This Court Lacks Jurisdiction Of The Claims Asserted In The Complaint Because Those Claims Will Not Have Any Conceivable Effect On The Named Plaintiffs' Bankruptcy Estate.**

25.    Bankruptcy jurisdiction is a narrow *in rem* jurisdiction that is based upon its authority over the *res*.  In order for a bankruptcy court to have jurisdiction of claims

10

involving non-debtors, the claims must have some conceivable effect on the administration of the bankruptcy estate. In this case, none of the claims set forth in the Complaint will have any conceivable effect on the Named Plaintiffs' bankruptcy estate. Therefore, this Court lacks jurisdiction of such claims and should dismiss the Complaint.

26.     Bankruptcy jurisdiction is set forth in 28 U.S.C. § 1334(a)-(b).[6] That jurisdiction is provided to district courts. Subsection (a) of § 1334 confers upon district courts "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Subsection (b) of § 1334 confers upon district courts "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b). Section 157 of title 28, U.S. Code, authorizes a District Court to refer bankruptcy cases and proceedings to a Bankruptcy Judge. Thus, while district courts have original jurisdiction under 28 U.S.C. § 1334, they may properly "refer" bankruptcy cases and proceedings to federal bankruptcy judges pursuant to 28 U.S.C. § 157.

27.     The jurisdiction conferred by Section 1334 may be broken down into the following two types of actions: (i) actions "arising under" or "arising in" cases under title

---

6       Neither the substantive provisions of the Bankruptcy Code nor the Federal Rules of Civil Procedure confer jurisdiction on the Bankruptcy Court. U.S. Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999) (noting that § 1142 does not alter the jurisdictional analysis under 28 U.S.C. § 1334(b)); Perniciaro v. Natale, 136 B.R. 344, 347 (Bankr. E.D.N.Y. 1992) (holding that substantive provisions of the Bankruptcy Code are not jurisdictional); 2 COLLIER ON BANKRUPTCY ¶ 105.01[1], at 105-3 (stating that § 105 "is not an independent source of jurisdiction"). Although Fed. R. Civ. P. 23 applies to adversary proceedings, see Fed. R. Bankr. P. 7023, "[a] procedural rule such as Rule 23 authorizing class actions, of course, cannot be read as enlarging the limited jurisdictional grant of § 1334." Beck v. Gold Key Leasing, Inc. (In re Beck), 283 B.R. 163, 175 n.18 (Bankr. E.D. Pa. 2002); Williams v. Sears, 244 B.R. 858, 865 (S.D. Ga. 2000); see Kontrick v. Ryan, 540 U.S. 443, 453-54 (2004) (holding that it is "axiomatic" that the Federal Rules of Civil Procedure do not create federal jurisdiction); Phillips v. First City, Texas – Tyler, N.A., 966 F.2d 926, 933-34 (5th Cir. 1992) (bankruptcy rules concern procedure, not substantive rights).

11, which are referred to as "core" proceedings, 28 U.S.C. §§ 157(b)(1)-(2), and (ii) non-core "related to" proceedings, 28 U.S.C. § 157(c).

28.     "Core" proceedings are a subset of the much broader category of "related to" proceedings. Thus, there could never be a "core" proceeding that is not "related to" a bankruptcy case. A proceeding that is not "related to" a bankruptcy case pending before the bankruptcy court simply cannot be a core proceeding. As the court in In re Lorax Corp., 295 B.R. 83, 89 (Bankr. N.D. Tex. 2003), accurately explained:

> [A]ny matter that is a core proceeding is a "related to" proceeding as that concept has been defined. This is so because core proceedings, by their very nature, affect the estate being administered in bankruptcy. The converse, however, is not true. Not all "related to" proceedings rise to the level of being "core proceedings". The court, therefore, views matters "arising in" or "arising under" the Code and core proceedings to be subsets of the broader category of matters "related to" bankruptcy cases. Thus, there could never be a core proceeding that was not related to a bankruptcy, but it is possible to have a proceeding related to a bankruptcy that is not core.

Id. at 89; Porter v. NationsCredit Consumer Disc. Co. (In re Porter), 295 B.R. 529, 537 (Bankr. E.D.Pa. 2003) ("The concept of a 'related' proceeding is simply wider in scope than that of a 'core' proceeding; these two jurisdictional categories are not completely separate and distinct. Rather, *all 'core' proceedings must be 'related' to a bankruptcy case, and so may be considered a subset of the broader category*.") (emphasis added); Csondor v. Weinstein, Treiger & Riley, P.S. (In re Csondor), 309 B.R. 124, 128-29

12

(Bankr. E.D. Pa. 2004) ("all core proceedings must be related to a bankruptcy and so may be considered a subset of the broader set").[7]

29.     A proceeding is "related to" a bankruptcy case when "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). As the Fifth Circuit later expounded, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" In re Majestic Energy Corp., 835 F.2d 87, 90 (5th Cir. 1988) (quoting Pacor, 743 F.2d at 994). Absent any such conceivable effect, a bankruptcy court lacks jurisdiction of the proceeding. See Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995); Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 569 (5th Cir. 1995).

30.     The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the

---

[7]      The mere fact that a matter is listed as "core" in Section 157(b) of title 28 does not mean that the Bankruptcy Court has jurisdiction of such claim if it cannot have an effect on the estate. Indeed, even proceedings specifically listed in Section 157(b)(2) as "core" proceedings may be outside of the bankruptcy court's jurisdiction if such proceedings do not have any effect on a debtor's estate. See Adams v. Prudential Securities, Inc. (In re Foundation for New Era Philanthropy), 201 B.R. 382, 389 (Bankr. E.D. Pa. 1996) ("a proceeding that is not a related proceeding a fortiori cannot be a core proceeding" and "not only must a core proceeding be related to a bankruptcy case, but disputes which might otherwise fall squarely within the examples of core matters found in 28 U.S.C. § 157(b)(2) -- e.g., proof of claim litigation-- have been found outside bankruptcy court jurisdiction -- i.e., to be unrelated matters -- when their outcome would not affect the bankruptcy estate."). As the district court declared in In re Central Ice Cream Co., 82 B.R. 933, 936 (N.D. Ill. 1987), "a proceeding that is not a related proceeding a fortiori cannot be a core proceeding". See In re County Seat Stores, Inc., 2007 WL 4191946, at *8-9 (Bankr. N.D. Tex. June 21, 2007) (dismissing claims under, inter alia, Sections 549 and 550 of the Bankruptcy Code because those claims would have no effect on the bankruptcy estate).

13

proceeding within the bankruptcy court's jurisdiction. Pacor, 743 F.2d at 994. "'To fall within the court's jurisdiction, the plaintiffs' claims *must affect the estate, not just the debtor.*'" Bass v. Denney (In re Bass), 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 94 (5th Cir. 1987) (emphasis added)); Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 753 (5th Cir. 1995) ("whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."); Mugica v. Helena Chemical Co. (In re Mugica), 362 B.R. 782, 788 (Bankr. S.D.Tex. 2007) (quoting Wood).[8]

None of the causes of action set forth in the Complaint will have any conceivable effect on the estate. The Named Plaintiff's Plan was confirmed over four years ago. That Plan does not provide for the distribution of the proceeds of any claims being asserted in the Adversary Proceeding to the Named Plaintiffs' creditors. Rather, the Named Plaintiffs intend to keep any recovery for themselves (and their counsel). As the Fifth Circuit has held, "[a]nother feature of this case that eschews 'related to' bankruptcy court jurisdiction is the fact that any recovery that might result . . . would not accrue to the estate." See Bass, 171 F.3d at 1024. Therefore, the claims set forth in the Complaint will have no conceivable effect on the Named Plaintiffs' bankruptcy estates, and as a result, the

---

[8]     The nature of bankruptcy jurisdiction is in *rem*. Central Va. Community College v. Katz, 546 U.S. 356, 126 S Ct. 990, 993 (2006) ("Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction"); see Gardner v. New Jersey, 329 U.S. 565, 574 (1947) ("The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*"). Bankruptcy jurisdiction "is premised on the debtor and his estate, and not on the creditors." Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447, 124 S. Ct. 1905, 1910, 158 L. Ed. 2d 764, 775 (2004). Thus, it is the relationship of the dispute to a bankruptcy estate that establishes bankruptcy jurisdiction. In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987). The Supreme Court has described *in rem* bankruptcy jurisdiction as a "narrow jurisdiction." Katz, 546 U.S. at 358.

Bankruptcy Court lacks any jurisdiction of such claims.  See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 789 (11th Cir. 1990) ("there is no suggestion that the proceeds, if recovered, would be turned over to the [bankruptcy] trustee. . . . [W]e fail to see how recovery could conceivably have an effect on [the] debtor's estate. . . . There is no reason for the bankruptcy court's jurisdiction to linger.") (relied upon by the Fifth Circuit in Bass).[9]  Because there is no bankruptcy jurisdiction under Section 1334, this Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).[10]

---

[9]      The underlying bankruptcy proceeding had been largely dormant for the past four years until Named Plaintiffs filed their Complaint.  It is therefore difficult to imagine that this proceeding has anything at all to do with the Plan or the bankruptcy estate.

[10]      The Named Plaintiffs also assert Section 1332 of title 28 as the jurisdictional basis for the claims set forth in the Complaint.  See Complaint at ¶ 14.  A bankruptcy court, however, does not have diversity jurisdiction under Section 1332.  In Section 1332 of title 28, U.S. Code, Congress conferred diversity jurisdiction on "district courts."  See 28 U.S.C. § 1332.  Congress did *not* confer diversity jurisdiction on bankruptcy judges.  See Canion v. Evans, 196 F.3d 579, 586 n.29 (5th Cir. 1999) (stating that the "basis for subject matter jurisdiction in each court was different--the jurisdiction of the district court was based on diversity under § 1332, and the jurisdiction of the bankruptcy court was based on bankruptcy 'related to' jurisdiction under §§ 1334(b), 157"); see In re JMP-Newcor Int'l., Inc., 225 B.R. 457, 460 (Bankr. N.D. Ill. 1998) ("nothing in the judicial code authorizes a district judge to refer to this Court a case over which the district court has only diversity jurisdiction"); The Bank of New England, N.A., Plaintiff, v. Hanson Indus., Inc. (In re Hanson Indus., Inc.), 83 B.R. 659, 664 (Bankr. D. Minn. 1988) ("Even where the district court can constitutionally exercise jurisdiction over state-based actions as in cases where there is also diversity jurisdiction, it is clear, from Marathon, that the bankruptcy court, in its role as adjunct to the district court, can adjudicate no such causes of action.") (quoting 130 CONG.REC. S. 8893-8897 (daily ed. June 29, 1984), reprinted in 1984 U.S.CODE CONG. & AD.NEWS 577, 585) (Comments of Senator Hatch).  Cf. Walker, 51 F.3d at 569-70 (Congress did not confer supplemental jurisdiction on bankruptcy judges.).

**B.    This Court Should Dismiss The Complaint Pursuant To Rule 12(b)(6) For Failure To State A Claim For Which Relief Can Be Granted.**

**1.    Rule 12(b)(6) Standard In General**

31.    A Rule 12(b)(6) motion tests the formal sufficiency of the statement of claim for relief in the Complaint. Doe v. Hillsboro Independent School Dist., 81 F.3d 1395, 1401 (5th Cir. 1996). In ruling on a Rule 12(b)(6) motion, the Court must accept as true all allegations in the Complaint, and must view those allegations, and all reasonable inferences therefrom, in the light most favorable to the plaintiff. United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).

32.    When considering a motion to dismiss, however, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Norris v. Hearst Trust, 500 F.3d 454, 464 (5th Cir. 2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986). Further, the plaintiff's complaint must allege "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." Hearst Trust, 500 F.3d at 464 (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). In particular, the plaintiff's complaint must provide factual allegations that raise a right to relief above the speculative level. Id. In this case, the entire Complaint is premised upon groundless assumptions.

33.    When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Bradley v. Phillips Petroleum Co., No. H-05-3912, 2007 U.S. Dist. LEXIS 92981, at *29 (S.D. Tex. Dec. 18, 2007) (quoting Twombly, 127 S. Ct. at 1966). "[A] district court must retain the power to insist upon some specificity

16

in pleading before allowing a potentially massive factual controversy to proceed." Id.
(quoting Twombly, 127 S. Ct. at 1967). Consequently, dismissal under Rule 12(b)(6) is
appropriate when the plaintiff's complaint has failed to allege "enough facts to state a
claim to relief that is plausible on its face" and has failed to "raise a right to relief above
the speculative level." Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., No. 06-11283,
2007 U.S. App. LEXIS 29738, at *3 (5th Cir. Dec. 21, 2007) (quoting Twombly, 127 S.
Ct. at 1965, 1974).

  34. In ruling on a Rule 12(b)(6) motion, the Court may also consider
indisputably authentic documents, public records, or documents that are attached to a
motion to dismiss whereby the plaintiff referred to or relied upon such documents in his
complaint. See Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003)
(recognizing limited exception to general rule providing that a district court must not go
outside the pleadings in determining whether to grant a motion to dismiss); Collins v.
Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (approving sister
circuits' practice to consider documents attached to a motion to dismiss as part of the
pleadings as plaintiff referred to such documents in the complaint); Lovelace v. Software
Spectrum, Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) (holding that in deciding a motion
to dismiss, a district court could properly rely on documents that were both required to be
filed and actually were filed with the Securities and Exchange Commission).

    **2. Fidelity's Arrangement With Its Network Attorneys Is Legal And Valid.**

      **(1) The Relationship Between Fidelity, Saxon And Mann And Stevens Does Not Violate Any Statute Or Ethical Rule.**

  35. In their zeal to find fault with Fidelity's Network Agreement, Plaintiffs fill
the Complaint with every law or rule remotely related to fee sharing, with complete

17

disregard for the applicable law or the underlying facts.  See Complaint ¶¶ 25-26, 82-94, 100-105.  Nothing alleged, however, prohibits the business relationship between Fidelity and its mortgage servicing clients or Network Attorneys.

36.     Fidelity provides administrative support services and related proprietary technology to its clients and Network Attorneys.  Fidelity utilizes the technology to manage data and communications in foreclosure and bankruptcy cases to enable servicers and their law firms to efficiently and effectively manage, in a secure environment, their mortgage loans in default.  Fidelity performs a variety of administrative functions, including, among other things, monitoring the status of accounts, tracking action items and providing reports to mortgage servicers.  As noted by Debtors, another administrative function performed by Fidelity is that Fidelity, on behalf of the mortgage servicer for a particular case, utilizes its proprietary technology to initiate contact with a client-designated Network Attorney to represent the mortgage servicer in either bankruptcy court or in a foreclosure, depending upon the circumstances.

37.     For its administrative support services and technology, Fidelity charges the law firms a small, *flat fee, which fee is payable regardless of whether the law firms are paid by the mortgage servicer.*  See Network Agreement, Exhibit 1 to the Complaint, ¶ 5.

38.     There is no allegation in this case that Fidelity, Saxon or Mann and Stevens improperly filed the Plan Objection or the Stay Relief Motion, or otherwise misstated any amount due and owing by the Named Plaintiffs at anytime during the bankruptcy case.  The Named Plaintiffs merely speculate that they have been charged improper fees.  No factual basis exists upon which to base such a claim, particularly

given that the Named Plaintiffs *never* objected to any fees during the many years that this case has been pending.[11]  As set forth below, the established business relationship does not violate any ethical rules, any section of the Bankruptcy Code or Rules, or any bankruptcy crime provisions of title 18, U.S. Code.

> **a.  The Texas Rules Of Professional Conduct Are Not Applicable And, In Any Event, Were Not Violated.**

39.     While Plaintiffs do not assert a claim against Fidelity for violating the Texas Disciplinary Rules of Professional Conduct ("Rules of Conduct"), Plaintiffs erroneously state that Fidelity's actions place its Network Attorneys in violation of "multiple ethical rules." Complaint ¶ 26.  Plaintiffs' averments are disingenuous and mere subterfuge.  The Rules of Conduct do not apply to non-lawyers, such as Fidelity.  Furthermore, the Rules of Conduct do not create a private cause of action.

40.     Plaintiffs seek to invoke the provisions of Rule 5.04(a) of the Rules of Conduct, which states in relevant part that:

> (a) A lawyer or law firm shall not share or promise to share legal fees with a non-lawyer, except that:
>
> (1) an agreement by a lawyer with the lawyer's firm, partner, or associate, or a lawful court order, may provide for the payment of money, over a reasonable period of time, to the lawyer's estate to or for the benefit of the lawyer's heirs or personal representatives, beneficiaries, or former spouse, after the lawyer's death or as otherwise provided by law or court order...

Tex. Disciplinary R. Prof'l Conduct R 5.04(a), reprinted in Tex. Gov't Code Ann., tit. 2, Subtit. G app. A (Vernon 2005).

---

[11]     The Named Plaintiffs recklessly assert that Fidelity's involvement results in debtors paying higher attorneys' fees.  In fact, the opposite is true.  Fidelity's tracking and enforcement of law firms' invoices has actually saved servicers (and, therefore, debtors) millions of dollars in attorneys' fees.  Of course, that factual "issue" is irrelevant for purposes of this Motion.

41.    The prohibition against a lawyer sharing fees with a non-lawyer is by its terms, not applicable to the non-lawyer.  In addition, no private cause of action exists for any violation of the Rules of Conduct, as these are enforceable only by the Disciplinary Committee against the lawyer.  See Tex. Disciplinary R. Prof'l Conduct, ¶ 15.  In fact, the Preamble expressly states that:

> The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.

Id.

42.    *The Rules of Conduct do not create a blanket violation for the payment by a law firm of any flat fee for services and technology paid by a law firm, for the use of copier technology and a copy service or to pay a flat fee to a process server.  That is not "sharing of legal fees."*  See Tex. Disciplinary R. Prof'l Conduct Opinion 502 (April 1994) (permitting sharing fees with referral service), Opinion 351 (March 1970) (administrative service fee for bond premium is not "fee for legal services"), Opinion 231 (April 1959) (payment by lawyer to client of flat fee is not "division of legal fees").

43.    In contrast, the Rules of Professional Conduct do prohibit sharing a *percentage* of legal fees.  See Tex. Disciplinary R. Prof'l Conduct Opinion 153 (June 1957) (finding violation where lawyer paid layman a percentage of collections).  Here, the Network Agreement indicates, on its face, that Fidelity did not share in the fees earned by Mann and Stevens (whether hourly or flat fees), but rather received a flat fee only for administrative services that Fidelity provided to Mann and Stevens.  The administrative services and technology provided by Fidelity to earn its fees are described

in ¶¶ A-EE of § 2 of Exhibit A to the Network Agreement (which is attached to the Complaint as Exhibit 1) (Bates "Saxon 0198-0199"). Where the Network Attorneys provide legal services to a mortgage servicer and where Fidelity does not provide any related administrative services, Fidelity does not receive any fee. See Exhibit B to Network Agreement (Exhibit 1 to the Complaint) at §§ IV.E and V.6 (Fidelity receives no part of Mann and Stevens' hourly fees); §§ IV.A, C, and D (Fidelity receives no fee where Mann and Stevens prepared demand letters or lost note affidavit); § V.5 (Fidelity receives no fee where Mann and Stevens attends hearing) (Bates "Saxon 0200-0201").

44.    In short, Mann and Stevens did not pay a percentage of their fees to Fidelity. The fees that were paid were flat fees for administrative support services and technology provided by Fidelity, which fees were payable even if Mann and Stevens never received any payment from its client, Saxon, or from the Named Plaintiffs' bankruptcy estate. See Network Agreement, Exhibit 1 to the Complaint, ¶ 5. The fees were not "fees for legal services" or "division of legal fees", but rather were fees owed pursuant to an arm's length transaction between a law firm and a service vendor. This type of business relationship is not prohibited conduct under the Rules of Conduct. See Tex. Disciplinary R. Prof'l Conduct Opinions 502 (April 1994), 351 (March 1970), 231 (April 1959).[12]

### b.    The Criminal Code Is Not Applicable And, In Any Event, Was Not Violated.

45.    Plaintiffs attempt to disparage Fidelity's business by alluding to an alleged bankruptcy crime under § 155 of title 18 of the U.S. Code. Plaintiffs do not assert a

---

[12]    Fee sharing of a percentage of fees received is commonly chastised in the medical profession as well. While fees paid by doctors for administrative services are not prohibited, a doctor may not share a percentage of fees with a hospital at which the doctor is an independent contractor. Texas Medical Practice Act § 151.055.

cause of action under this statute. Instead, Plaintiffs make a desperate attempt to capture attention by sensationalizing their alleged causes of action.

46.     The criminal statute provides that a party in interest or a representative thereof cannot "knowingly and fraudulently" enter into any agreement "with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to any attorney for any party in interest for services rendered in connection therewith, from the assets of the estate, shall be fined under this title or imprisoned not more than one year, or both." 18 U.S.C. § 155.

47.     As a preliminary matter, there is no private cause of action under this criminal statute. Moreover, as indicated above, Fidelity's fees were paid by Mann and Stevens, not the Named Plaintiffs' bankruptcy estate. Those fees were payable regardless of whether Saxon ever paid Mann and Stevens. If the administrative fees paid to Fidelity by its Network Attorneys violate § 155, then so would every fixed-fee agreement between a law firm and its process server or copy service.

48.     Plaintiffs make scandalous, unsupported allegations of fraud and employ conclusory and inflammatory labels like "puppet master." The United States Supreme Court requires more. The Court requires, even at this early stage of the litigation, that Plaintiffs set forth "grounds" for their alleged "entitlement to relief". Twombly, 127 S. Ct. at 1964-65. The Plaintiffs are merely seeking to use this forum to advance an unsubstantiated and scurrilous attack on the mortgage industry. However, lacking any grounds whatsoever for their alleged entitlement to relief, this Court should dismiss the Complaint.

22

        **c.**      **Section 504 Of The Bankruptcy Code Is Not Applicable, And In Any Event, Was Not Violated.**

49.     The Plaintiffs also erroneously assert that Fidelity's agreement with its Network Attorneys violates Section 504 of the Bankruptcy Code. While the Bankruptcy Code regulates compensation sharing, it only does so under certain circumstances. Section 504(a) limits fee sharing among lawyers and other professionals, but only as to those receiving fees pursuant to sections 503(b)(2) and 503(b)(4). Section 503(b)(2) only applies to professionals employed by a trustee, debtor in possession, or creditors' committee. See 11 U.S.C. § 503(b)(2). Section 503(b)(4) only applies to attorneys for creditors that make certain contributions to the bankruptcy estate, which circumstances are inapplicable here. See 11 U.S.C. § 503(b)(4). §§ 503(b)(2) and (b)(4) and are § 504 are inapplicable.

50.     In the present matter, no fee sharing exists. Mann and Stevens simply paid Fidelity for its administrative support services and technology. Such payment was not fee-sharing because it was due and payable regardless of whether Mann and Stevens was ever paid by Saxon (or the Named Plaintiffs' estate). In any event, § 504 simply does not apply.

        **3.**      **The Claims Based Upon Alleged Violations Of Bankruptcy Code § 506 And Bankruptcy Rule 2016 Should Be Dismissed For Failure To State A Claim (Counts I and II).**

            **(1)**     **There Is No Private Right Of Action To Enforce § 506 Of The Bankruptcy Code Or Bankruptcy Rule 2016.**

51.     Plaintiffs allege that certain actions taken by Fidelity violate Bankruptcy Code § 506 and Bankruptcy Rule 2016. Plaintiffs also allege that as a result of those violations, they are entitled to monetary and non-monetary relief under Bankruptcy Code

§ 105. Since there is no private cause of action for those alleged violations, this Court should dismiss Counts I and II of the Complaint.

52.      In determining whether a plaintiff may enforce a statutory provision, courts look first to the language of the statute. <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568 (1979). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2000). Absent evidence of congressional intent to create a private right and a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." <u>Id.</u> at 286-87.

53.      Courts consider four factors in determining whether a private remedy can be implied in a federal statute: (1) whether the statute creates a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent to create or deny a private civil remedy; (3) whether it would be consistent with the underlying purposes of the legislative scheme to imply a private civil remedy; and, (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate to infer a cause of action based solely on federal law. <u>Cort v. Ash</u>, 422 U.S. 66, 77 (1975); <u>Acara v. Banks</u>, 470 F.3d 569, 571 n.1 (5th Cir. 2006).

54.      Bankruptcy Code § 506 does not establish a private right of action for debtors. With respect to the first factor, § 506 of the Bankruptcy Code was not enacted for the benefit of (much less for the "special benefit of") debtors in bankruptcy. To the contrary, the purpose of that Section was to confer substantive rights on *creditors* (i.e., calculation/valuation of secured claims). That Section does not proscribe conduct of

creditors or impart rights to debtors. Thus, a private remedy in favor of the Plaintiffs is inconsistent with the underlying purpose of the Bankruptcy Code generally.

55.     With respect to the second and most important factor, there is absolutely no evidence of any congressional intent to confer upon debtors any private civil remedies under § 506. In fact, there is evidence that Congress intended *not* to confer a private cause of action for alleged violations of those sections.

56.     Congress' establishment of a detailed enforcement scheme expressly providing a private right of action for violating certain provisions of a statute is a strong indication that Congress did not intend to provide private litigants with a means of redressing violations of other provisions of the statute. Casas v. Am. Airlines, Inc., 304 F.3d 517, 523 (5th Cir. 2002). The Bankruptcy Code provides a private right of action to redress violations of the automatic stay. See 11 U.S.C. § 362(k) (formerly § 362(h)). Implying a private cause of action to "enforce" sections of the Bankruptcy Code that do not include an express cause of action would be inconsistent with the overall statutory scheme of the Bankruptcy Code.

57.     The Plaintiffs' argument that they are entitled to enforce the provisions of the Bankruptcy Code by invoking the Bankruptcy Court's equitable powers under § 105(a) of the Bankruptcy Code also fails as a matter of law. Section 105(a) of the Bankruptcy Code provides, in relevant part, that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Fifth Circuit has held that Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." Perkins Coie v. Sadkin (In re Sadkin), 36 F.3d 473, 478 (5th Cir. 1994) (*quoting* U.S. v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) (holding that Section 105 does not give a Bankruptcy Court the authority to create substantive rights); Chiasson v.

Bingler (In re Oxford Management Inc.), 4 F.3d 1329, 1333-34 (5th Cir. 1993).  Nor does

Section 105 "constitute a roving commission to do equity" (Sutton, 786 F.2d at 1308) or

"allow the bankruptcy court to override explicit mandates of other sections of the

Bankruptcy Code." 2 Lawrence P. King COLLIER ON BANKRUPTCY ¶ 105.01[2] (15th ed.

2004).  The Supreme Court, amplifying this point, has held that "[u]nder this section, a

court may exercise its equitable power only as a means to fulfill some specific Code

provision." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988).

 58.    Recognizing those limits on § 105(a), all four Circuit Courts of Appeal to

have addressed the issue have held that there is no private cause of action under § 105 for

any alleged violations of the Bankruptcy Code.  See e.g., Joubert v. ABN AMRO

Mortgage Group, Inc. (In re Joubert), 411 F.3d 452, 454 (3d Cir. 2005) ("§ 105(a) does

not afford a private cause of action to redress an alleged 506(b) violation."); Walls v.

Wells Fargo Bank, N.A. (In re Walls), 276 F.3d 502, 509 (9th Cir. 2002) ("to imply a

private right of action [under Section 105 of the Bankruptcy Code] would undercut the

'complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code");

Bessette v. Avco Fin. Serv. Inc., 230 F.3d 439, 444-45 (1st Cir. 2000) (Section 105 of the

Bankruptcy Code is not a "roving commission to do equity" and *does not* create a private

right of action"), cert. denied sub nom. Textron Funding Corp. v. Bessette, 532 U.S. 1048

(2001); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 423 and 425 (6th Cir. 2000)

(Section 105 cannot remedy breaches of Section 363).  Most bankruptcy courts have

reached the same conclusion.  E.g., In re Knox, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999)

(Section 105(a) "does not in itself provide any cause of action allowing suit to recover for

a defendant's filing of an allegedly fraudulent proof of claim."); Gabel v. Olson (In re

Olson), 355 B.R. 649, 659 (Bankr. E.D. Tenn 2006) (bankruptcy court cannot, under

guise of § 105(a), create private right of action in favor of creditor where one does not

exist in bankruptcy law); Yancey v. Citifinancial, Inc. (In re Yancey), 301 B.R. 861

(Bankr. W.D.Tenn. 2003) (Section 105 does not create private cause of action for filing improper proofs of claim); <u>Simmons v. Ford Motor Credit Co.</u>, 224 B.R. 879, 885 (Bankr. N.D.Ill. 1998) ("Even accepting as true the Debtor's allegations that the creditor regularly files proofs of claims in which the entire amount of its claim is characterized as secured, the court concludes that § 105(a) does not authorize the relief she seeks."); <u>Holloway v. Household Auto. Fin. Corp.</u>, 227 B.R. 501, 504-07 (Bankr. N.D.Ill. 1998) (no private right of action can be implied under Section 105(a)).[13]

59.     Moreover, the legislative history accompanying the Bankruptcy Code also evidences Congress' intent that no private cause of action exists under Section 105 of the Bankruptcy Code.  In 1984, Congress amended Section 362(h) of the Bankruptcy Code to provide a private cause of action.  No express cause of action, however, was added to Section 105(a).  See <u>Knox</u>, 237 B.R. at 700 (In 1984 Congress added a private cause of action under Section 362(h) and, therefore, "it follows that legislation similar to § 362(h) 'would be necessary to create a private cause of action under § 105'") (quoting <u>In re Costa</u>, 172 B.R. 954, 966 (Bankr. E.D.Cal. 1994)).

60.     There is also no private cause of action for violating Bankruptcy Rule 2016.  Assuming that Rule 2016 applies to Fidelity, "there is no remedy within the Rule itself for a failure to file such an application."  <u>In re Yancey</u>, 301 B.R. 861, 868 (Bankr.

---

13 Fidelity recognizes that the Bankruptcy Court presiding over the Named Plaintiffs' bankruptcy case held in <u>In re Sanchez</u>, 372 B.R. 289 (Bankr. S.D.Tex. 2007), that "[t]he Court does not need to find a private right of action under § 506(b) or Rule 2016 to conclude that "§ 506(b) and Rule 2016 create rights *and* duties for creditors in bankruptcy cases.  A creditor may be entitled to payment of professional fees under its contract with a debtor, but before those funds will be paid from the bankruptcy estate, the creditor must affirmatively demonstrate the reasonableness of the fees to the court after notice.  If a creditor elects to ignore the law to obtain such fees, it is well within the Court's authority under § 105 to rectify that error."  <u>Id.</u> at 311-12.  Fidelity respectfully disagrees with the Bankruptcy Court's analysis in <u>Sanchez</u> and relies upon the authority discussed above.  In this case, however, there is no need to revisit the <u>Sanchez</u> holding because Fidelity was not a "creditor" of the Named Plaintiffs subject to any of the "duties" to which the Bankruptcy Court referred in <u>Sanchez</u>.  Therefore, in this case, the Named Plaintiffs seek to create a cause of action under Section 506(b) and Bankruptcy Rule 2016.

W.D.Tenn. 2003) (no right to monetary damages or injunctive relief for any alleged violation of Rule 2016). See also In re Logan, 124 B.R. 729, 734 (Bankr. S.D. Ohio 1991) (a local bankruptcy rule "does not and cannot create a substantive cause of action"); In re Marcus Hook Dev. Park, Inc., 153 B.R. 693, 704 (Bankr., W.D. Pa. 1993) (bankruptcy rules do not create substantive causes of action); see also Phillips v. First City, Texas – Tyler, N.A., 966 F.2d 926, 933-34 (5th Cir. 1992) (bankruptcy rules concern procedure, not substantive rights); Tompkins v. Cyr, 995 F.Supp. 689, 696 (N.D. Tex. 1998) aff'd, 202 F.3d 770 (5th Cir. 2000) (no cause of action for failure to comply with R.11 Fed. R. Civ. P. or R.13 Tex. R. Civ. P.); Estate of Calloway v. Marvel Entm't Group, 9 F.3d 237, 241 (2d Cir. 1993), cert. denied, 511 U.S. 1081 (1994) (the procedural rules providing for sanctions do not create causes of action for or entitlement to compensatory damages or attorney fees).

61.     Whatever theory the Plaintiffs may espouse, there is simply no private cause of action for alleged violations of the Bankruptcy Code (other than as provided in § 362(k)). Therefore, this Court should dismiss Counts I and II for alleged violations of Bankruptcy Code § 506 and Bankruptcy Rule 2016, whether directly thereunder or through Bankruptcy Code § 105. Such causes of action simply do not exist.

> **4.     Plaintiffs' State Law Claims For Breach Of Contract And Civil Conspiracy Are Preempted By The Bankruptcy Code And, Therefore, Should Be Dismissed (Counts III and V).**

62.     In Count III of the Complaint, the Plaintiffs assert a state law breach of contract claim against Fidelity for allegedly breaching the Plan.[14] In Count V, the Plaintiffs assert a state law civil conspiracy claim against Fidelity. Both of those alleged claims are preempted by the Bankruptcy Code and, therefore, should be dismissed.

---

[14] In Count III, the Plaintiffs seek relief pursuant to Bankruptcy Code § 105. As § 105 does not give rise to any private cause of action, Count III should also be dismissed for the same reasons as Counts I and II.

63.     The Bankruptcy Code provides the exclusive remedial scheme for alleged violations of the Bankruptcy Code and Rules.  See MSR Exploration v. Meridian Oil, Inc., 74 F.3d 910, 913 (9th Cir. 1996).  A plaintiff cannot superimpose state law causes of action on the Bankruptcy Code or Rules.

64.     For example, in MSR Exploration, a Chapter 11 debtor brought an action under state law for malicious prosecution against a creditor, alleging that the creditor had filed and pursued payment of improper proofs of claim in the debtor's bankruptcy.  Id. at 911.  The United States Court of Appeals for the Ninth Circuit held that the plaintiff's state law claims were preempted by the Bankruptcy Code, observing that:

> the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrate[s] Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.  While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.  It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

Id. at 914 (footnote and citation omitted).

65.     Permitting separate state law causes of action based upon alleged violations of the Bankruptcy Code "would undermine the uniformity the [Bankruptcy] Code endeavors to preserve and would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in carrying out its constitutional mandate to provide uniform bankruptcy laws.  Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 426 (6th Cir. 2000); see also Knox v. Sunstar Acceptance Corp. (In re Knox), 237 B.R. 687, 701 (Bankr. N.D. Ill. 1999) (the "expansive reach of the [Bankruptcy] Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts").

66.     The key to the inquiry is whether a finding of a Bankruptcy Code violation is necessary to fulfill the burden of proof of the state law claim.  For example, in a case from the Northern District of Illinois, in finding that plaintiff's state law claims were preempted by the Bankruptcy Code, the court explained:

> Without the requirement that defendant submit proofs of claim under the Bankruptcy Code, and the Code's codification of a permissible method by which to value secured claims, Plaintiff would have no grounds on which to bring an action for fraud under the CFA. Thus Plaintiff's CFA claim is wholly dependent upon the Bankruptcy Code . . . because the Code has sections applicable to adjudicate the value of secured claims and provides remedies for fraud, we hold that Plaintiff's state law CFA claim is preempted by the Bankruptcy Code.

Holloway v. Household Auto. Fin. Corp., 227 B.R. 501, 507-08 (N.D. Ill. 1998).

67.     Here, the Plaintiffs' state law claims are wholly dependent upon alleged violations of Bankruptcy Code §§ 506 and 362, Bankruptcy Rule 2016, and the Plan. Plaintiffs' claim for an alleged breach of contract is premised upon the assertion that Fidelity breached some obligation in the Plan.  Plaintiffs' civil conspiracy claim is based upon the assertion that Fidelity violated provisions of the Bankruptcy Code and Rules.

68.     As the Bankruptcy Code provides the exclusive remedies for dealing with alleged violations thereof, the Plaintiffs' breach of contract and civil conspiracy claims are completely preempted by the Bankruptcy Code and must be dismissed.  See MSR Exploration, 73 F.3d at 913-14; Knox, 237 B.R. at 701; see also Eastern Equip. & Servs. Corp. v. Factory Point Nat'l. Bank, 236 F.3d 117, 121 (2d Cir. 2001) (finding state law claims of intentional and negligent infliction of emotional stress, bad faith, breach of fiduciary duties, fraud, harassment and tortious interference were preempted because such claims were based on alleged violations of the Bankruptcy Code); Walls v. Wells

30

Fargo Bank, 255 B.R. 38, 46 (E.D. Cal. 2000) (holding plaintiff's claims preempted by Bankruptcy Code); Cox v. Delaware, Inc., 242 B.R. 444, 449-50 (N.D. Ill. 1999) (deliberately expansive reach of the Bankruptcy Code preempts virtually all claims which allege misconduct in Bankruptcy proceedings); Shiner v. Moriarty, 706 A.2d 1228, 1237-38 (Pa. Super. Ct. 1998) (holding that Pennsylvania state law claims were preempted by the Bankruptcy Code), appeal denied, 556 Pa. 711, 729 A.2d 1130 (1998).  The Plaintiffs' request in Count III for attorneys' fees pursuant to § 38.001 of the Texas Civil Practice & Remedies Code is also preempted.  Therefore, this Court should dismiss Counts III and V for failure to state a claim on which relief may be granted.

### 5. Plaintiffs' Claims For Violations Of Section 506(b) Of The Bankruptcy Code § 506(b) And Breach Of Contract Fail As A Matter Of Law Because Fidelity Is Not A "Creditor" (Counts I and III).

69.     Fidelity is not a creditor of this bankruptcy estate.  Fidelity is a provider of default administrative services.  Fidelity provides a single source solution and point of contact that connects its mortgage servicing clients with law firms across the country. These administrative services translate to an overall benefit to the industry by streamlining the client's servicing of defaulted mortgage loans in a single proprietary technology.

70.     Section 506(b) only applies to creditors.  In this case, Saxon was the creditor.  Neither the law firm nor Fidelity is a creditor of the individual borrowers. Neither is a party to the loan documents.  Neither is owed money from the borrower. Neither has any claim or recourse against the borrower.

71.     Since Section 506(b) only applies to creditors, and by definition Fidelity is not a creditor in this case, a claim for violating Section 506(b) cannot stand.

72.     Not only is Fidelity not a creditor, it is not a party to a contract with the Named Plaintiffs. The Plaintiffs attempt to bind Fidelity to the Chapter 13 Plan. Only the Named Plaintiffs and their creditors, however, are parties to that contract. Therefore, Counts I and III must be dismissed.

        **(1)   Plaintiffs' Claim For Alleged Violation Of Section 506 of the Bankruptcy Code Must Fail Because Fidelity Is Not A "Creditor." (Count I).**

73.     Section 506 is a provision of the Bankruptcy Code which provides for the determination of the extent and value of an allowed, secured claim of a *creditor* secured by a lien on property. See 11 U.S.C. § 506(a) and (b). The Bankruptcy Code defines a "creditor" in § 101(10) as "(A) an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor, or (B) entity that has a claim against the estate of a kind specified in §§ 348(d), 502(f), 502(g), 502(h) or 502(i) of this title, or (C) entity that has a community claim." 11 U.S.C. § 101(10)(A)-(C). Quite clearly, Fidelity is not a creditor and does not have a claim against the Debtors or their respective estates. If a Network Attorney failed to pay Fidelity its administrative fee, Fidelity could never seek to recover that fee from a borrower, just as a copy service or process server could not file a Proof of Claim to collect its fee where a firm failed to pay its bill, regardless of whether their services were connected to the borrower's loan.

74.     The Named Plaintiffs have duly admitted that Fidelity is not a "creditor." A debtor is required to file Schedules listing all of the debtor's liabilities, whether secured or unsecured. See Official Forms 6D-6F (Schedules D-F). On the Petition Date, the Named Plaintiffs filed their Schedules D-F. See D.I. No. 1. Those Schedules D-F were signed by the Debtors under penalty of perjury. See D.I. No. 1; Fed.R.Bankr.P. 1008. At no time during their 4 and 1/2 year long bankruptcy case have the Named

32

Plaintiffs sought to amend their Schedules D-F to list Fidelity as a "creditor." Accordingly, through their Schedules D-F, the Named Plaintiffs have admitted that Fidelity is not a "creditor." See In re Padilla, 2006 WL 2090210, at *1 (Bankr. S.D.Tex. June 29, 2006) ("A debtor's admissions in bankruptcy schedules are highly relevant. Debtors must honestly fill out the schedules on penalty of criminal prosecution and on penalty of losing a bankruptcy discharge."); Sovran Bank v. Anderson, 743 F.2d 223, 225 n.1 (4th Cir. 1984) (stating that uncorrected bankruptcy schedules give rise to admissions against the debtor); In re Harris, 279 B.R. 254, 263 (9th Cir. BAP 2002) ("schedules, which are executed by the debtors under penalty of perjury, are non-hearsay admissions when offered by an adverse party"); In re Leverett, 378 B.R. 793, 804 (Bankr. E.D.Tex. 2007) (debtor's schedules constitute admissions); In re Cox, No. 06-11717-CAG, 2007 WL 4219407, at *4 n.6 (Bankr. W.D.Tex. Nov. 28, 2007) ("Court can take judicial notice of the Debtor's schedules, filed in the case under oath. See F.R.E. 201(c) ('[a] court may take judicial notice, whether requested or not.'). Also, a debtor's listing of a debt in his schedules which were signed under penalty of perjury 'constitutes a party-opponent admission under Federal Rule of Evidence 802(d)(2)).'").

75.     This Court does not have the authority to apply § 506 to an entity that is not a "creditor" as required by the plain language of § 506. As the Supreme Court has instructed, "[w]hen the words of a statute are unambiguous, then . . . judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992); Patterson v. Shumate, 504 U.S. 753, 761 (1992) ("Although courts appropriately may refer to a statute's legislative history to resolve statutory ambiguity, the clarity of the statutory language at issue in this case obviates the need for any such inquiry.") (citation omitted).

Indeed, the Supreme Court has already enforced the plain language of § 506. <u>See</u>

<u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,</u> 530 U.S. 1, 7 (2000)

(interpreting "the trustee" in Section 506(c) of the Bankruptcy Code to exclude all parties

except the trustee).  As instructed by <u>Hartford Underwriters</u>, this Court must enforce the

plain language of § 506(a) and (b), which apply only to a "creditor."

76.    Even by the admission of the Named Plaintiffs', Fidelity is not a creditor.

This Court cannot use § 105 to override the plain language of § 506 and apply it to

Fidelity.  <u>See</u> 2 Lawrence P. King COLLIER ON BANKRUPTCY ¶ 105.01[2] (15th ed. 2004).

Thus, Count I should be dismissed for failure to state a claim as a matter of law.

(2)    **Plaintiffs' Claim For Alleged Breach Of Contract Relating To The Plan Fails Because Fidelity Is Not A "Creditor" And Did Not Violate Any Provision Of The Plan (Count III).**

77.    The Bankruptcy Code provides that "[t]he provisions of a confirmed

[Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such

creditor is provided for by the plan, and whether or not such creditor has objected to, has

accepted, or has rejected the plan." 11 U.S.C. § 1327(a).[15]  As discussed above, Fidelity

is not (and never was) a "creditor" as defined in the Bankruptcy Code.  Fidelity is not,

and never was, owed any money by the Named Plaintiffs or their estate.  Rather, Fidelity

earns its revenue by providing administrative services and technology.  Fidelity, as a non-

creditor, is not a party to the contract formed by the Named Plaintiffs and their creditors

under the Plan and, therefore, could not have breached such contract.  For that reason,

this Court should dismiss Count V for failure to state a claim.

---

[15] Notably, the language in § 1327(a) regarding the binding effect of a chapter 13 plan is narrower than the language in § 1141(a) regarding the binding effect of a chapter 11 plan. Pursuant to § 1141(a), a confirmed chapter 11 plan binds "the debtor, . . . any entity acquiring property under the plan, and any creditor." 11 U.S.C. § 1141(a).

78.     Count III fails as a matter of law for another equally fundamental reason. Although the Named Plaintiffs assert that Fidelity breached the contract formed by the Plan, the Named Plaintiffs fail to point out any provision of the Plan that Fidelity violated.  Count III, which is simply more rhetoric lacking any factual or legal basis, fails as a matter law and should be dismissed.

> **6.     The Plaintiffs Have Failed To State A Claim Under The Bankruptcy Code For Alleged Violations Of The "Fee Approval Provision" Of Fed.R.Bankr.P. 2016 Because That Provision Is Inapplicable (Count II).**

79.     In the Complaint, the Plaintiffs allege that Fidelity's "secret receipt of fees" violates Bankruptcy Rule 2016(a).  See Complaint at ¶ 90.  That false assertion provides the foundation upon which the majority of Plaintiffs' claims are based.  Those claims, like the foundation upon which they rest, fail as a matter of law for several reasons.

80.     First, the Plaintiffs' assertion that Bankruptcy Rule 2016 applies is erroneous.  Rule 2016(a) applies only to entities seeking compensation from the "estate." Fed.R.Bankr.P. 2016.  Fidelity is not, and never was, an entity seeking compensation from the "estate."  The decisions dealing with alleged violations of Rule 2016 all dealt with entities that received compensation from the estate. See In re Hence, No. 06-32451-H4-13, 2007 Bankr. LEXIS 4156, *29 (Bankr. S.D. Tex. Dec. 5 2007); In re Sanchez, 372 B.R. 289, 304-05 (Bankr. S.D.Tex. 2007); In re Padilla, 2007 Bankr. LEXIS 2655 (Bankr. S.D. Tex. Aug. 3, 2007).  Fidelity did not receive any compensation from the estate.  Pursuant to the Network Agreement, Fidelity was paid by the law firm, Mann and Stevens.  Fidelity was entitled to receive payment from Mann and Stevens even if that law firm never received any compensation from Saxon, and even if Saxon never received

any compensation from the estate.  Accordingly, Bankruptcy Rule 2016 does not apply to Fidelity.

81.     Second, Fidelity did not "share compensation" with Mann and Stevens or any other entity that may have been subject to Bankruptcy Rule 2016.  Rather, as stated above in detail, Fidelity was paid an administrative fee by Mann and Stevens for services performed.  Fidelity was entitled to payment from Mann and Stevens regardless of whether Mann and Stevens ever received payment from the mortgage servicer, Saxon, and regardless of whether Saxon ever recovered a penny from the Named Plaintiffs' bankruptcy estate.  Therefore, the administrative service fee is not part of Mann and Stevens' legal fee, but rather is a separate, distinct and independent fee owed to Fidelity.

82.     Third, the Federal Bankruptcy Rules cannot as a matter of law abridge, modify, or enlarge any substantive right.  28 U.S.C. § 2072 (the Rules Enabling Act).  Specifically, the Rules Enabling Act ensures that the rules be interpreted so as not to alter substantive rights created by statute.  Interpreting Bankruptcy Rule 2016 to apply to Fidelity, an entity that is not a "creditor," that did not seek compensation from the estate under § 506, and that did not engage in any fee-sharing (let alone any fee sharing prohibited by § 504) would violate the Rules Enabling Act.

83.     Accordingly this Court should dismiss Count II of the Complaint.

**7.     The Plaintiffs Have Failed To State A Claim Under Bankruptcy Code § 362(h) Because Bankruptcy Code § 362(a)(3) Is Inapplicable And, In Any Event, Was Not Violated. (Count IV.)**

84.     In the Complaint, the Plaintiffs allege that Defendant violated § 362(a)(3) of the Bankruptcy Code.  See Complaint at ¶¶ 100-105.  The facts as alleged in the Complaint, however, establish as a matter of law that § 362(a)(3) is inapplicable.

36

85.    Section 362(a)(3) prohibits certain acts with respect to "property of the estate." Fidelity did not collect any property of the estate. Rather, Fidelity was paid for the administrative support services provided to and technology licensed by Mann and Stevens. Mann and Stevens was required, pursuant to the terms of the Network Agreement, to pay for such services and technology regardless of whether any of Mann and Stevens' legal fees were paid by Saxon and regardless of whether Saxon received any recovery from the Named Plaintiffs' estate. See Network Agreement, Exhibit 1 to the Complaint, § 5 and Exhibit C thereto. Specifically, the Network Agreement provides that "the Firm will be invoiced separately by Fidelity for the administrative fees . . . ." Id. Fidelity is never paid by the individual debtors or their estates. Id.

86.    Here, the Named Plaintiffs aver that their estate was charged $200 as the legal fee for the filing of the Objection, which was billed to their account by Saxon and $650 as the legal fee for the filing of the Stay Relief Motion, which they repaid to Saxon pursuant to the Agreed Order. By their own admission, the amounts paid went directly to Saxon and nothing was paid to Fidelity.[16]

87.    If the Named Plaintiffs wanted to attack the reasonableness of the fees charged in this case (and the government published rates as well), then they should not have agreed to pay those fees in the Agreed Order.

---

[16]    The payment of Mann and Stevens' post-petition fees did not violate the stay. See Campbell v. Countrywide Home Loans, Inc. (In re Campbell), 361 B.R. 831, 850 (Bankr. S.D.Tex  2007) (Isgur, J.) (secured creditor's collection of post-petition fees does not violate the stay). It is well-established that actions within the bankruptcy court do not constitute violations of the automatic stay. E.g., In re Miller, 397 F.3d 726, 729 (9th Cir. 2005) ("The automatic stay does not apply to proceedings initiated against the debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy proceedings are pending.")

88.     Regardless of the Named Plaintiffs' issues with Mann and Stevens' fees, Fidelity could not have violated the automatic stay pursuant to Bankruptcy Code § 362(a)(3).  The Named Plaintiffs' arguments are based upon the false assertion that the payment of Mann and Stevens' fees was tantamount to paying Fidelity with property of the estate.  If that were true (which it is not), every payment made by a law firm to a service provider, utility or landlord would somehow be violative of the automatic stay.

89.     Fidelity did not take any action with respect to "property of the estate" and, therefore, did not violate Section 362(a)(3) of the Bankruptcy Code.  Accordingly, Count IV should be dismissed.

> **8.     The Causes Of Action Set Forth In The Complaint Constitute An Improper Collateral Attack On The Agreed Order. (Counts I-VI).**

90.     In the Complaint, the Named Plaintiffs attempt to collaterally challenge the reasonableness of the $800-$850 in attorneys' fees paid by the Named Plaintiffs pursuant to the *Agreed Order*.  See Complaint at ¶¶ 42-52.  The Named Plaintiffs assert that those fees were artificially inflated by "kickbacks" to Fidelity.  To the extent that the Named Plaintiffs believed those fees were excessive, they should have agreed objected to them prior to the entry of the Agreed Order.  The Named Plaintiffs failed to challenge such fees over 4 years ago.  They also failed to file a motion to alter or amend the Agreed Order under Bankruptcy Rule 9023 and failed to seek relief from the Agreed Order under Bankruptcy Rule 9024.  See Fed.R.Bankr.P. 9023 and 9024.  In fact, the Named Plaintiffs seem to believe that they can collaterally attack what they perceive to be excessive fees due to alleged kickbacks, notwithstanding that the Agreed Order remains in full force and effect.  The Named Plaintiffs are incorrect.  See, e.g., Spartan Mills v. Bank of America, III, 112 F.3d 1251, 1255 (4th Cir. 1997) ("[t]he judicial system's need for order and

38

finality requires that orders of courts having jurisdiction to enter them be obeyed until

reversed, even if proper grounds exist to challenge them"), cert. denied, 522 U.S. 969

(1997); In re D.S., 76 S.W.3d 512, 519 (Tex. Ct. App. 2002) ("We conclude that Leslie's

challenge to the 1996 agreed order is an impermissible collateral attack on the

judgment").

91.     Not only is the Named Plaintiffs' attempt to challenge the reasonableness

of the legal fee misplaced, their challenge to the Agreed Order is also barred by the

doctrine of issue preclusion. See Copeland v. Merrill Lynch & Co., Inc., 47 F.3d 1415,

1423 (5th Cir. 1995) (Collateral estoppel (issue preclusion) is an equitable doctrine that

should be applied when the alignment of the parties and the legal and factual issues

warrant it.). Due to doctrine of issue preclusion, or as a collateral attack on the Agreed

Order, the claims set forth in the Complaint should be dismissed for failure to state a

claim.

### 9.     The Claims For Alleged Stay Violation And Civil Conspiracy Should Be Dismissed Due To The Expiration Of The Applicable Statute Of Limitations (Counts IV And V).

92.     The alleged violation of Bankruptcy Code § 362(a)(3) (Count IV) or for

civil conspiracy (Count V), is governed by a two-year statute of limitations.

Accordingly, the claims are barred and should be dismissed due to the expiration of the

applicable statute of limitations.

93.     The Bankruptcy Code does not contain a statute of limitations for claims

under § 362(k) for alleged violations of the Bankruptcy Code. As the Supreme Court has

acknowledged, such a void is commonplace in federal statutory law. Board of Regents v.

Tomanio, 446 U.S. 478, 483 (1980). To fill that void, federal law adopts "the state law of

limitations governing an analogous cause of action". Id. at 483-84; Wilson v. Garcia, 471

U.S. 261, 266-67 (1985) ("By adopting the statute governing an analogous state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action"). Accordingly, this Court should apply to the alleged § 362(h) claims the analogous State of Texas statute of limitations applicable to tort, trespass, unfair debt collection or deceptive trade practices claims. See In re Bernheim Litigation, 290 B.R. 249, 259-60 (D.N.J. 2003) (applying New Jersey statute of limitations to § 362(h) claims).[17]

94.     Texas law provides a two-year statute of limitations for (i) most tort claims (including trespass and civil conspiracy), Tex. Civ. Prac. & Rem. Code § 16.003 (governing most Texas tort actions, see Williams v. Khalaf, 802 S.W.2d 651, 654-56 (Tex. 1990)); see also First Nat'l Bank of Eagle Pass v. Levine, 721 S.W. 2d 287, 288-89 (Tex. 1986) (stating that trespass includes any act that unlawfully interferes with another's person or property); Seniguar v. Ford Motor Co., 222 F. Supp. 2d 829, 832 n.2 (E.D. Tex. 2002) (citing Connell v. Connell, 889 S.W.2d 534, 540 (Tex. Ct. App. 1994, writ denied) (stating that the limitations period for civil conspiracy claims is two years); (ii) deceptive trade practices, Tex. Bus. & Comm. Code § 17.565; (iii) unfair debt collection actions, Tex. Civ. Prac. & Rem. Code § 16.003; (iv) conversion, Tex. Civ. Prac. & Rem. Code § 16.003; and (v) unjust enrichment, HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998). Accordingly, Plaintiffs' claims for alleged violations

---

[17]     Claims for alleged violations of the automatic stay may also be barred for equitable reasons. See In re Barclay, 337 B.R. 728, 2006 Fed.App. 0004N, at *7 (6th Cir. BAP Feb. 1, 2006) (TABLE, TEXT IN WESTLAW, NO. 05-8019) (Section 362(h) claim filed more than a year and one-half after the case was closed was barred by equitable considerations); In re Adams, 212 B.R. 703, 711 (Bankr. D.Mass. 1997) (laches would bar the debtor's claims under § 362(h)).

of Bankruptcy Code § 362(a)(3) (Count IV) and for civil conspiracy (Count V) should be

dismissed as time-barred because such claims arise out of alleged conduct occurring well

before January 16, 2006 (which is two years before the Plaintiffs filed the Complaint).[18]

> **10.   Count VI Of The Complaint Fails Because "Punitive Damages" Are Not A Cause of Action.**

95.    Count VI, for Punitive Damages, fails to allege a cause of action.  Rather,

it simply sets forth a remedy.  See In re Methyl Tertiary Butyl Ether Products Liability

Litigation, 517 F.Supp.2d 662, 666 (S.D.N.Y. Sept. 20, 2007) ("Punitive damages are a

monetary remedy . . . .  Punitive damages are not a 'claim'") (footnote omitted); Smith v.

County of Racine, 2007 WL 2570435, at *5 (E.D. Wis. Aug. 31, 2007) ("Punitive

damages are a remedy, not a claim."); Safeway Ins. Co. v. Botma, No. C4V00-553-PHX-

RCB, 2003 WL 24100783, at *31 (D. Ariz. March 7, 2003) ("Punitive damages are a

remedy, not a claim."), aff'd, 129 Fed.Appx. 355 (9th Cir. April 7, 2005); see also Kraus

v. Howroyd-Wright Empl. Agency, Inc., No. 06-975, 2008 U.S. Dist. LEXIS 1254, *33

(E.D. Pa. Jan. 8, 2008).

96.    In addition, punitive damages are not available under the Bankruptcy

Code and, if applicable in this matter, would constitute a state law cause of action

preempted by the Bankruptcy Code.  See generally ASARCO LLC v. Ams. Mining

---

[18] The statute of limitations in Texas for fraud and breach of contract claims is four years.  See Tex. Civ. Prac. & Rem. Code § 16.004 (2007); see also Elledge v. Friberg-Cooper Water Supply Corp., NO. 06-0677, 2007 Tex. LEXIS 706, at *3-*4 (Tex. Aug. 24, 2007) (providing statute of limitations period for breach of contract actions is four years); Via Net v. TIG Ins. Co., 211 S.W.3d 310, 312 (Tex. 2006) (providing four-year limitations period applies to breach of contract actions); Sullivan v. Bickel & Brewer, 943 S.W .2d 477, 481 (Tex. Ct. App. 1995, writ denied) (Common law fraud claims are subject to a four-year statute of limitations) (citing Williams v. Khalaf, 802 S.W.2d 651, 654 (Tex. 1990)).  Accordingly, all putative class claims in Counts I-III, and VI that may be grounded in alleged fraud or breach of contract arising out of alleged conduct occurring prior to January 16, 2004 (four years before the Named Plaintiffs filed the Complaint) are time-barred.

Corp., No. 07-018, 2007 U.S. Dist. LEXIS 85832, at *81 (5th Cir. Oct. 12, 2007)

(Bankruptcy Code does not provide for punitive damages).  As such, Count VI would be

preempted like Counts III and V for the reasons discuss above.

      97.    Thus, the Plaintiffs' claim for punitive damages is legally deficient for at

least two reasons.  Accordingly, this Court should dismiss Count VI for failure to state a

claim on which relief may be granted.

## VI.    CONCLUSION

      For the foregoing reasons, Fidelity National Information Services, Inc.

respectfully requests that this Court enter an Order (i) granting Fidelity National

Information Services, Inc.'s Motion to Dismiss, (ii) dismissing the Complaint,

(iii) awarding costs to Fidelity National Information Services, Inc., and (iv) granting such

further relief to Fidelity National Information Services, Inc. as is appropriate.

Dated:  February 22, 2008

                      Respectfully submitted,

                      WINSTEAD PC

            By:    */s/Joseph G. Epstein*
                      Michael P. Cash, Esquire
                      Texas Bar No. 03965500
                      S.D. Texas No. 5472
                      Joseph G. Epstein, Esquire
                      Texas Bar No. 06639320
                      S.D. Texas No. 11733
                      1100 JPMorgan Chase Tower
                      600 Travis Street
                      Houston, Texas 77002
                      Telephone: 713-650-8400
                      Facsimile: 713-650-2400

                      -and-

Of Counsel:

Mark S. Melodia, Esquire
Kurt F. Gwynne, Esquire
Barbara K. Hager, Esquire
Thomas Levinson, Esquire
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
215-851-8100
215-851-1420 (facsimile)

Counsel for Fidelity National
Information Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008, a true and correct copy of the foregoing instrument has been served on all parties entitled to receive notice via the Court's Electronic Filing System and by United States Mail, postage prepaid and properly addressed to the persons or parties listed below.

/s/Joseph G. Epstein
Joseph G. Epstein

Johnnie Patterson
Michael Walker
Miriam Goott
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, Texas 77208

David K. Bissinger
Gerald S. Siegmyer
SIEGMYER, OSHMAN & BISSINGER LLP
2777 Allen Parkway, 10th Floor
Houston, Texas 77019