

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/04/2008

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EARNEST HARRIS, and | § | Case No. 03-44826 |
| MATTIE HARRIS | § | Chapter 13 |
| | § | |
| Debtors | § | |
| | § | |
| EARNEST HARRIS, and | § | |
| MATTIE HARRIS, on behalf of | § | Adv. No. 08-3014 |
| themselves and all other similarly | § | |
| situated Chapter 13 debtors | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| FIDELITY NATIONAL | § | |
| INFORMATION SERVICES INC. | § | |
| d/b/a FIDELITY NATIONAL | § | |
| FORECLOSURE & BANKRUPTCY | § | |
| SOLUTIONS, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS**
[Docket No. 8]

I.  Introduction

On February 22, 2008, Fidelity National Information Services, Inc. d/b/a Fidelity National Foreclosure & Bankruptcy Solutions (Defendant) filed a Motion to Dismiss the Plaintiffs' Complaint. [Docket No. 8.] On March 17, 2008, the Plaintiffs filed an Opposition to the Motion to Dismiss. [Docket No. 34.] On March 21, 2008, the Defendant filed a Reply in Support of the Motion to Dismiss. [Docket No. 37.] On March 27, 2008, the Court held a hearing on the Motion to Dismiss. On April 1, 2008, the Court made oral findings of fact and conclusions of law on the

record. This Memorandum Opinion is intended to memorialize the Court's oral ruling at the April 1, 2008 hearing.

The Motion to Dismiss sought dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and also under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. As discussed below, the Court concludes that it has subject matter jurisdiction over all six of the counts in the Plaintiffs' Complaint, but that two of the six counts must be dismissed for failure to state a claim.

## II. Summary of the six counts in the Complaint

In the broadest terms, the Plaintiffs' Complaint alleges that the Defendant was responsible for a "kickback" program involving unauthorized fee-splitting with law firms. Although not addressed in this Memorandum Opinion, the Plaintiffs seek class certification for all similarly situated Chapter 13 debtors in Southern District of Texas whose cases were handled by the Defendant.

The Defendant is not a law firm. It describes its function as providing "administrative support services to law firms and clients, by facilitating the flow of information between mortgage servicers and law firms." [Docket No. 8, ¶ 3.] In the mortgage industry, the Defendant is known as a default servicer, a type of middleman between traditional mortgage servicers and local law firms. According to the Plaintiffs, default servicing consumes significant amounts of time and resources of traditional servicers and these expenditures are non-recoverable overhead. The Plaintiffs allege that the Defendant receives voluminous files from many different mortgage servicers and uses these aggregated files as leverage with local counsel to require that the local counsel "kickback" a contractual percentage of their attorney fees to the Defendant. Thus, the traditional mortgage

2

servicer saves the expense of default servicing and the Defendant is able to convert the formerly non-recoverable overhead into recoverable attorneys' fees. However, the Defendant's relationships with its selected law firms and the mortgage servicers have never been disclosed to the Court or the Plaintiffs.[1]

The Complaint alleges that the trail of funds among the parties is as follows:

- The law firm performs services and bills the mortgage servicer

- The mortgage servicer pays this invoice by remitting a check to the law firm, and then simultaneously charges the debtor's account (thereby increasing the balance owed by the debtor).

- Thereafter, a proof of claim is filed which includes the amount of the invoice paid to the law firm.

- The law firm, after receiving payment on its invoice, remits a portion of the amount received from the mortgage servicer to the default servicer (i.e. the Defendant in this adversary proceeding).

- The debtor makes monthly payments to the Chapter 13 trustee, which constitute property of the estate. The trustee then distributes a portion of these payments to the mortgage servicer, and these funds are applied to reduce the balance owed by the debtor, including the amount that was paid to the law firm.

---

[1] In the adversary proceeding at bar, the law firm chosen by the Defendant is Mann and Stevens, P.C. and the servicer is Saxon Mortgage Services, Inc. The Plaintiffs contend that in numerous other Chapter 13 cases, the Defendant has chosen other law firms and received files from other servicers similarly situated to Mann and Stevens and Saxon, respectively. Presumably, that is why this adversary proceeding is brought as a class action suit and neither Mann and Stevens nor Saxon are presently named defendants.

3

- Thus, the default servicer receives remuneration from funds ultimately paid by post-petition earnings of the debtor, which constitute property of the debtor's estate.

The Complaint contains a total of six counts. Count One relates to a violation of 11 U.S.C. § 506(b), which allows secured creditors to recover "any reasonable fees, costs, or charges provided for under" an agreement or applicable state law. Count Two relates to a violation of Rule 2016(a), which requires "an entity seeking interim or final compensation for services . . . from the estate shall file an application" with the Court. Count Three relates to a breach of contract claim; the contract at issue is the Plaintiffs' confirmed Chapter 13 plan and the Defendant's conduct is alleged to be a violation of the terms of that plan. Count Four relates to a violation of the automatic stay under 11 U.S.C. § 362(a)(3). Count Five relates to a civil conspiracy based upon the actions described in Counts One through Four. Count Six requests punitive damages under 11 U.S.C. § 362(h) for the stay violation described in Count Four.

### III. The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) is denied because all of the Plaintiffs' causes of actions are core proceedings.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction (i.e. the Plaintiffs in the case at bar). *McNutt v. GM Acceptance Corp.*, 298 U.S. 178, 80 L. Ed. 1135, 56 S. Ct. 780 (1936). The Court must assume as true all of the allegations in the complaint and the facts as set forth therein. *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir.1985). A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ynclan v. Department of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991).

4

Pursuant to 28 U.S.C. § 1334, district courts have jurisdiction over "civil proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(b)(1) states that, upon automatic referral from the district courts, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." Core proceedings are described in a non-exclusive list in 28 U.S.C. § 157(b)(2). The Fifth Circuit's core proceeding analysis focuses on whether the proceeding involves rights derived from the bankruptcy code rather than other state or federal law:

> "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding."

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (1987). *See also U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002).

When determining whether a proceeding is core, the Court must consider both the form as well as the substance of the proceeding. *Wood*, 825 F.2d at 97.

"To fall within the court's jurisdiction, the plaintiff's claim must affect the estate, not just the debtor." *Wood*, 825 F.2d at 94. The Defendant argues that this is a post-petition, post-confirmation suit which will serve only to "line the pockets" of the Debtors individually and will not have any conceivable effect on the estate. The Court disagrees.

The Court concludes that all of the Plaintiffs' claims are core proceedings because each count has an effect on the estate and each count could not exist outside of the context of a bankruptcy case.

5

The funds that the Defendant allegedly obtained without the necessary authorization of this Court were paid from the Plaintiffs' post-petition earnings which, in a Chapter 13 case, are property of the estate. *See* 11 U.S.C. § 1306(a)(2). Had these fees not been charged to the Plaintiffs' bankruptcy estate, then the estate would have been larger. If the Plaintiffs are successful and the Defendant is required to disgorge these funds, the Plaintiffs will not be profiting but will be receiving a refund of monies that should have never left the estate. These disgorged funds will be available to make plan payments.[2] Thus, this suit will have an effect on the estate.

Additionally, each count in the Plaintiffs' Complaint is based upon a substantive provision of Title 11 and could not exist outside of bankruptcy, thus satisfying the *Wood* definition of a core proceeding. Count One is for a violation of 11 U.S.C. § 506(b), a provision of the Bankruptcy Code which has no state law equivalent. Count Two is for a violation of Bankruptcy Rule 2016, again a Rule that is unique to the bankruptcy process. Count Three is for a breach of contract. Although this would normally be a state law claim, the subject contract is actually the confirmed Chapter 13 plan—once again a matter that is unique to the bankruptcy process. Count Four is for a violation of the automatic stay, a quintessential core bankruptcy proceeding. *Credit Adricole Indosuez v. JLH, L.L.C.*, 2000 U.S. Dist. LEXIS 881, *14 (E.D. La. 2000) (citing *Carabetta Enterprises, Inc. v. City of Ashbury Park*, 162 B.R. 399, 404 (D. Conn. 1993)); *see also Lilly v. FDIC, Corp.*, 1990 U.S. Dist. LEXIS 16477, *10 (E.D. La. 1990). Count Five is based upon a civil conspiracy. Like the breach

---

[2] Moreover, even if the Debtors had completed their plan and there was no longer an estate, this Court would still have jurisdiction over this suit. *See Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 652 n. 4 (Bankr. S.D. Tex. 2007) ("The Fifth Circuit has also found that after a bankruptcy case is closed, subject matter jurisdiction remains in the Bankruptcy Court to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated.") (citing *In re Bradley*, 989 F.2d 802 (5th Cir. 1993). The court in *Padilla* held that it had jurisdiction over the discharged debtor because the cause of action related to the implementation and execution of the plan. In the main case at bar, there is still an uncompleted plan in effect and therefore the arguments made in *Padilla* apply with even greater force to establish this Court's subject matter jurisdiction.

of contract claim, this is also a state law cause of action. However, the goal of the conspiracy alleged by the Plaintiffs is to circumvent the requirements of the Code and Bankruptcy Rule 2016. Indeed, only a debtor could be harmed by this conspiracy. Finally, Count Six invokes 11 U.S.C. § 362(h) to request punitive damages for violation of the automatic stay. In sum, the Court has subject matter jurisdiction over each of the Plaintiffs' counts because they are all core proceedings which could not exist outside of bankruptcy. Therefore, the Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) must be denied.

## IV. The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is denied in part and granted in part.

"A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). When ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999)). The complaint need only contain facts sufficient "for an inference to be drawn that the elements of [the claim] exist." *Walker v. South Cent. Bell. Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990). However, the complaint must allege "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The Court "must retain the power to insist upon some specificity before allowing a potentially massive factual controversy to proceed." *Id.* at 1967. The Court considers whether each of the Plaintiffs' counts individually states a claim upon which relief may be granted.

### A. Count One

The Defendant's first argument is that there is no private cause of action to enforce § 506(b).[3] This Court thoroughly addressed and rejected this position in *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 309-312 (Bankr. S.D. Tex. 2007). The Court concluded that its equitable powers under § 105(a) extend to the enforcement of § 506(b) and Rule 2016. Nothing has changed in the months since *Sanchez* and the Court remains steadfast in its position. Accordingly, this argument has no merit.

Second, the Defendant argues that it is not a creditor and therefore cannot be subject to § 506(b), which on its face applies only to the holder of "an allowed secured claim." A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The Defendant does not have a contractual relationship with the Debtor in any capacity. Indeed, a large part of the Plaintiffs' suit is that the Defendant's existence was intentionally concealed from them. The Defendant is in privity with the network of local law firms, but this fact does not give it a claim against a debtor. Even assuming, as this Court must in ruling on a Rule 12(b)(6) motion, that all facts are true as pleaded, the Defendant does not have a claim against these Plaintiffs or any putative class members. Its right to payment is limited to the local law firms it hires. While a mortgage servicer typically has an assignment of certain rights from the noteholder—such as the right to demand payment—the Defendant is merely an agent of the servicer and does not have the right to demand any payment from a debtor. Therefore, this Court

---

[3] This same argument was made in relation to Count Two and Rule 2016. The Court's analysis is the same as to both counts.

concludes that § 506(b) is inapplicable to the Defendant and that the Motion to Dismiss should be granted as to Count One.

**B.    Count Two**

The Defendant argues that Rule 2016(a) is limited to entities that seek compensation from property of the estate and that the compensation it receives from the network attorneys is not property of the estate. This Court disagrees. Property of the estate is used to pay the attorneys' fees requested in a proof of claim. In the case at bar, this amount is $600.00.[4] The Defendant argues that the funds lose their designation as property of the estate because it is the law firm, not the debtor, who is making the actual payment of $150.00 to the Defendant. Additionally, the Defendant contends that because the law firm makes payment to the Defendant for each and every file regardless of whether any fees are recovered from the estate, the $150.00 is not a portion of the $600.00.

The Defendant's arguments may eventually prove to be successful. However, the Complaint alleges that this $150.00 fee is only paid to the Defendant after the law firm receives its $600.00 payment—and this Court must take this allegation as true for purposes of this Motion to Dismiss. Assuming that the $150.00 fee is paid as a portion of the $600.00 of estate property received by the firm, then the money received by the Defendant is also property of the estate. Accordingly, the Court must deny the Motion to Dismiss as to Count Two.

---

[4] "In deciding a recent case with strikingly similar facts to the case at bar, Bankruptcy Judge Elizabeth W. Magner noted that when a bank 'applies any portion of Debtor's earnings to undisclosed fees and charges, rather than the installments owed under the note and payable under the plan, it reduces Debtor's ability to pay either the reasonable and necessary costs of his support or the amounts due under his plan.' *In re Jones*, 2007 Bankr. LEXIS 1349, 2007 WL 1112047, at *12. Therefore, Judge Magner concluded, the bank's 'satisfaction of postpetition charges constitutes a taking of property of the estate and impacts the Debtor's ability to comply with the terms of the plan.'" *Sanchez*, 372 B.R. at 313.

9

### C. Count Three

Count Three is a breach of contract claim for violating the terms of the confirmed Chapter 13 plan. The Defendant argues that it is not bound by the plan because it was not a creditor of the estate and did not participate in the Plaintiff's bankruptcy. 11 U.S.C. § 1327(a) states: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." However, there are no provisions in the Code which make a plan binding upon a non-creditor third party. Accordingly, the Court concludes that the Motion to Dismiss should be granted as to Count Three.

### D. Count Four

Under Count Four, which is for a violation of the automatic stay under 11 U.S.C. § 362(a)(3), the Defendant again argues that it does not receive property of the estate. The Court has already addressed and refuted this argument above. The Defendant's other argument under Count Four is that the Court should impose a two-year statute of limitations on claims under § 362(a)(3) because that would be the statute of limitations under state law for deceptive trade practices (Tex. Bus. & Comm. Code § 17.565) and unfair debt collections (Tex. Civ. Prac. & Rem. Code § 16.003). The Court declines to impose such a statute of limitations on violations of the stay. Moreover, even if there was a statute of limitations for claims under § 362(a)(3), the Plaintiffs were not made aware of the Defendant's existence and therefore such a statute could not have run on these Plaintiffs. Accordingly, the Motion to Dismiss is denied as to Count Four.

### E. Count Five

Count Five alleges a civil conspiracy based on the actions described in Counts One through Four. The Defendant reiterates the same arguments made above. For all the reasons stated above,

the Court concludes that the Motion to Dismiss Count Five should be denied because Counts Two and Four survive the Motion to Dismiss.

### F.     Count Six

Count Six requests punitive damages for violation of the automatic stay as provided by 11 U.S.C. § 362(h). This Count is not an actual cause of action, but rather is a type of relief requested in connection with Count Four. Accordingly, the Court is neither granting nor denying the Motion to Dismiss Count Six. Rather, the Court instructs counsel for the Plaintiffs to file an Amended Complaint that correctly sets forth this request in the paragraph praying for relief and deletes Count Six.

### V.     Conclusion

The Motion to Dismiss is granted as to Counts One and Three. The Motion to Dismiss is denied as to Counts Two, Four, and Five. Counsel for the Plaintiffs is instructed to amend the Complaint so that Count Six is correctly characterized as part of the prayer for relief rather than an independent cause of action. An appropriate order has already been entered on the docket.

Signed on this 4th day of April, 2008.

Jeff Bohm
U.S. Bankruptcy Judge